Calvin D. **FREEMAN** et al., Appellants,

v.

**KANSAS CITY POWER & LIGHT COMPANY**, Respondent.

No. 57802.

Supreme Court of Missouri, Division No. 1.

Dec. 10, 1973.

Graham, Paden, Welch & Martin, Michael J. Albano, Independence, for appellants.

William H. Woodson, Kansas City, for respondent; Spencer, Fane, Britt & Browne, Kansas City, of counsel.

SEILER, Judge.

Appeal from a judgment in a personal injury suit filed by plaintiffs, Calvin Freeman, a construction crew employee for Missouri Water Company, and his wife, against defendant Kansas City Power and Light Company. The case was tried be-

fore a jury which returned a verdict for defendant on all counts. Inasmuch as we had jurisdiction of this appeal at the time it was filed by virtue of the amount in controversy, we are to retain and decide the case as provided by Sec. 31 of the 1970 amendment to Art. V, 1945 Missouri constitution, V.C.M.S. We affirm.

Plaintiff Freeman sustained electrical burns on May 15, 1968 while working for his employer, Missouri Water Company, on a roadside water line construction project. Freeman has no recollection of the circumstances surrounding the accident and the facts, as nearly as they can be established, are based on the testimony of other witnesses to the accident.

Plaintiffs assert there were numerous trial errors committed against them. Defendant denies this and says, further, that plaintiffs failed to make a submissible case and that Mr. Freeman was guilty of contributory negligence as a matter of law, questions which we consider unnecessary to resolve in view of our opinion that plaintiffs are not entitled to a new trial on any of the grounds presented.

Defendant maintained overhead electrical lines in the same right of way where the water main construction work was being done. The three overhead lines, one of which was a high voltage line carrying 7200 volts, were not covered with any insulating material, but were supported by cross arm poles approximately 27 feet above ground at the site where the accident occurred.

At the time of the accident a crane was being used to lift heavy iron pipe over a fence and lay it in a trench. In so doing, the crane had to move under the overhead electrical lines. Plaintiff Freeman was acting as a signalman for the crane operator, "Doc" Starnes, who was facing the morning sun and could not see to manipulate the pipe. Starnes testified that Freeman signaled for the pipe to be raised slightly and for the boom and pipe to be swung to the north (in the direction of the electrical lines). Starnes heard a "pop" which he attributed to electricity and saw Freeman start to run; he then saw Freeman dive under the crane about the time he heard a second electrical "pop". Freeman sustained electrical burns on his neck, back, both legs and left foot.

Plaintiffs' theory of the case is that the crane became electrically charged when a spark jumped from the high voltage line, a phenomenon known as "sparkover", to the crane which was at the nearest approximately two feet below and that defendant had negligently failed to isolate or sufficiently elevate its lines. Defendant contends that the accident occurred when the crane touched the high voltage line, and charges Freeman with contributory negligence in directing the operation of the crane.

Plaintiffs make numerous assignments of error in the trial court's handling of the case. They first assert the trial court erred in admitting into evidence the out of court remark of plaintiffs' witness, Marion Smith, which was included in an accident report filed by an investigator for the Missouri Water Company. Smith was an eye witness. On direct examination during plaintiffs' case in chief, Smith gave his version of the accident, which testimony included the statement, ". . . and Mr. Recker jumped the ditch and he said, 'that got Cal'". On cross examination, Smith was asked if he had made a statement to the investigator and then the following exchange took place:

"Q. Didn't you tell folks, and didn't Mr. Recker, in fact, say as he jumped over the ditch that 'They got the boom in the wires and that Cal got it'? Isn't that what Mr. Recker said?

"A. No, no.

"Q. Didn't you tell that to your employer? Did you tell him that's what Mr. Recker said to you?"

Plaintiffs' objection to the questioning on the basis of hearsay was overruled.

During defendant's case in chief, an employee of the Missouri Water Company, Lawrence E. Martin, was called to testify. Martin testified that he was office manager of the water company, that he had custody and control of accident investigation documents, and that investigation reports of all company accidents were customarily made in the ordinary course of business. A report of the accident in question was admitted into evidence. Martin testified that the report was probably made within a day or two of the accident.

The accident report contains a statement attributed to Smith where he said, ". . . About that time Recker jumped over ditch and said that they had got the boom in the wires and it had got Cal . . ." Plaintiffs contend the trial court erred in admitting this statement into evidence because the statement involved multiple hearsay.[1] Defendant asserts the accident report was admissible under the business records exception to the hearsay rule and the purported statement of Smith contained therein is admissible as a prior inconsistent statement to impeach Smith's credibility as a witness.

■ What plaintiffs are overlooking is that the out of court statement of Smith as to what Recker said and the purported statement of Recker which was the subject of Smith's statement as contained in the accident report were not admitted into evidence to prove the truth of the matters asserted in that statement, i.e., for hearsay purposes, but were admitted as a prior inconsistent statement to impeach Smith's credibility as a witness. The inconsistency in Smith's story centered around what Recker said, so that what Smith stated Recker said, as contained in the accident report, was admissible to impeach what Smith testified in court Recker said.

Plaintiffs are correct that the accident report and the statements included therein were not admissible to show plaintiff Freeman's contributory negligence and plaintiffs were entitled to a limiting instruction so informing the jury. State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58, 61 (1939). Plaintiffs made no request for such a limiting instruction. The trial court's ruling in overruling the objection to the accident report was not error.

Plaintiffs' next point is that the trial court erred in permitting defendant, over objection, to cross examine the witness, "Doc" Starnes, concerning his knowledge of electrical lines. Plaintiffs objected to this testimony as irrelevant, immaterial and prejudicial, as tending to influence the jury to charge plaintiff with knowledge that he did not possess.

■ Starnes was the crane driver at the time of the accident and was the principal trial witness with regard to the facts of the occurrence. On cross examination Starnes answered questions relating to his knowledge of danger from power lines. He also testified that he had had some discussions with plaintiff Freeman about these dangers and had heard him talking about these hazards to other crew members. In view of these discussions and the fact that the evidence was relevant to any possible negligence on the part of Starnes which might have caused the accident, we cannot say that the evidence was irrelevant, immaterial or prejudicial.

■ Next, plaintiffs assert the trial court erred in sustaining defendant's objection to questions asked Starnes by plaintiffs with regard to whether a different method of moving pipes was used by the water company when the workmen knew there were high voltage lines in the vicini-

---

1. Plaintiffs did not contend in the trial court or here that the accident report is not within the Uniform Business Records as Evidence Law, or that the foundation require-ments of Sec. 490.680, RSMo 1969, V.A. M.S., were not met. See Stegall v. Wilson, 416 S.W.2d 658 (Mo.App.1967).

ty. Plaintiffs say the court's ruling was error because the court had permitted defendant to inquire, over objection, into the custom and practice of Missouri Water Company when working around power lines, and defendant having opened up an improper subject of inquiry, was estopped from objecting to its further development, on the theory of curative admissibility, citing Daniels v. Dillinger, 445 S.W.2d 410 (Mo.App.1969) and Kelley v. Hudson, 407 S.W.2d 553 (Mo.App.1966). However, even if we were to say that there is a similarity between what defendant asked and what plaintiffs sought to ask sufficient to bring into play the doctrine mentioned, the point was in effect eliminated because Starnes, in response to further questioning by plaintiffs, testified they always handled large pipe with a crane, thus denying any different method or custom and practice in handling this type of pipe, regardless of the voltage of nearby electrical lines. The point is overruled.

■■■ Plaintiffs next assert the trial court erred in sustaining defendant's objection to plaintiffs' questions to the witness Starnes seeking to show that Starnes had not read over or signed his transcribed deposition, defendant arguing the questions were objectionable because it had been agreed by counsel and witness that presentment to and signature of the witness were waived. By sustaining the objection plaintiffs say the court denied plaintiffs and the witness the right to "clarify" the answers given in the deposition which defendant had used against Starnes in cross examination at the trial. Of course, even if Starnes as a deposition witness had waived the reading and signing of his deposition, he would not thereby be prevented from explaining inconsistencies between his deposition and his trial testimony, but the record shows that no such result occurred by the sustaining of the objection. In his testimony at trial Starnes testified the boom did not touch the wires. In his deposition he testified a time or two to the contrary, as defendant pointed out. Several times Starnes explained that he misunderstood the question put to him in the deposition and made what he said were the correct answers. Several times plaintiffs' counsel had Starnes point out portions of the deposition where he had testified as to the distance between the wires and the boom. There is no indication plaintiffs were hindered in bringing out from Starnes whatever explanations or prior consistencies were available. The point is overruled.

The fifth point raised by plaintiffs is that the trial court erred when, upon request by the jury to send to the jury room ". . . all photos and the chart that are part of the evidence", the court excluded photographs of Mr. Freeman's injuries. Plaintiffs admit the matter of showing exhibits to the jury is in the court's discretion, see Eller v. Crowell, 238 S.W.2d 310 (Mo.1951), but argue that by picking and choosing which exhibits were to be sent to the jury the court made a silent comment on the evidence and tacitly rebuffed the photographic evidence of Mr. Freeman's injuries to plaintiffs' prejudice.

The court made these comments in reference to its decision not to send the injury photos to the jury:

"Now, the question of the burn situation, I don't know that that's included when they say 'all photos and the chart', so I don't believe at this time, unless they ask for it specifically, I am going to send Plaintiffs' Exhibit No. 10, which shows the picture of the burns on the leg—no controversy that the man did receive the burns and he had the skin grafting. I don't think that that is their problem."

■■■ We agree with plaintiffs generally that once a court has determined that an item of evidence is admissible in a case, that evidence should be made available to the jury on an equal basis with all other evidence in the case. In the case before us, however, the court did not arbitrarily exclude this item of evidence from that

sent to the jury, but determined that the nature of plaintiff's injuries was not an issue and reasoned that pictures of the injuries would not be helpful to the jury in their deliberations. This being the case, we cannot say that the court's action in this matter was error.

Next plaintiffs contend there was prejudicial error in what defendant's counsel said in opening statement as to an electrical industry safety code. In opening statement defendant told the jury, "There will be evidence that these lines were built to substantially exceed the minimum requirement of what is called the National Electrical Safety Code which has been accepted as the standard of Missouri." Plaintiffs' objection to this statement was overruled. Plaintiffs assert the trial court thereby erred because these opening remarks were prejudicial and misleading by indicating that the National Electrical Safety Code was the applicable standard of care to be considered by the jury in determining the negligence of defendant.

■ The trial court should have sustained the objection and directed the jury to disregard the statement. An industry code is an admission of what the industry considers it should do, but the defendant's duty is and continues to be to exercise the highest degree of care in its operations. Gladden v. Missouri Public Service Company, 277 S.W.2d 510 (Mo.1955). Even so, we do not believe this error on the part of the trial court warrants reversal, because (1) instructions No. 3 and 4 held the defendant to exercise of the highest degree of care and (2) plaintiff brought out from defendant's vice president and also from defendant's expert witness that the code provisions were only minimum standards.

■ In their seventh point plaintiffs assert the trial court erred in sustaining defendant's objection to plaintiffs' use of the word "lethal" in a question put to defendant's vice president as to warnings given "of the lethal current carried" in the line. The term had been used by plaintiffs in other questions several times prior to defendant's objection that use of the term might prejudice the jury. The court sustained the objection, saying, "I think it is a misuse of the term 'lethal'. This man was not killed . . ." While it cannot be said that lethal is an inaccurate characterization of 7200 volts, the trial court has a broad discretion in trial matters of the sort under consideration and we are not convinced we should not defer to the trial court's handling of the point.

■ Plaintiffs next assert the court abused its discretion when it interfered with plaintiffs' attempt to elicit testimony from an adverse witness, Stanley Jameson, vice president, Kansas City Power and Light Company, in such a way as to give the jury the impression that plaintiffs' counsel was held in disfavor with the court. Such an objection is not timely presented when raised for the first time in a motion for new trial, as is the case here. See State v. McCullough, 411 S.W.2d 79 (Mo.1967).

■ Plaintiffs' next point is that the court erred in allowing defendant, over objection, to bring out in cross examination of the witness Jameson evidence which plaintiffs assert should have been reserved for defendant's case in chief. Plaintiffs called Jameson primarily to establish that Freeman's employer, the water company, had notified defendant by letter of the water company's construction project near defendant's lines and to ascertain through Jameson what the defendant company had done about warning the water company of the dangers of the electrical lines at the site where the water company was laying pipe.

On cross examination, the court permitted defendant to introduce through Mr. Jameson the National Safety Code, and he testified to its recommended minimum height of lines, the height of defendant's lines at the scene, and compliance by defendant with the standards of the code.

While we do not say there could never be an occasion when it is unfair to the party calling an adverse or hostile witness for his opponent to obtain what the witness knows as a whole while he is on the stand, we do not see where the procedure followed in this particular instance in itself produced any confusion of issues or was unfair to plaintiff, and again therefore, we are impelled to abide by the ruling of the trial court on this item of trial procedure.

Plaintiffs next contend the court erred in admitting into evidence, over objection, scale drawings of the boom truck and cast iron pipe, it having been developed by plaintiffs on the voir dire examination of the witness who prepared the models that the drawings could be off as much as four inches in the length of the boom. However, these defects in the models were brought out by answers to questions put to the witness in the presence of the jury, so the jury was aware of the limitations in accuracy, and the models were offered with the statement that the dimensions could be off from one half of one per cent to one percent. It does not appear, therefore, that the possible variations took on any misleading significance, or that the court erred in permitting use of the drawings.

As their eleventh point, plaintiffs assert the trial court erred in allowing the witness, Larry T. Petus, an electrical engineer in defendant's employ, to give an expert opinion, over objection, as to spark-over distance. Plaintiffs assert Petus was not a qualified expert on this subject. However, Petus was a professional engineer, graduating from the University of Kansas in 1960. For two years he was assistant district engineer with an electric utility firm in Richmond, Missouri, and for nine years he was a distributor engineer for the defendant. He had studied and made observations of the matter of distance, gap or separation over which spark-over would occur. For 7200 volts he put

it at less than half an inch. On this foundation we cannot say the trial court was in error in permitting him to express an opinion on the subject. We note, too, that his testimony was cumulative, another expert witness for defendant having earlier testified to the same effect, as well as introducing a supporting publication on the subject from the American Institute of Electrical Engineers.

For their final point, plaintiffs assert the trial court's decision should be reversed under the cumulative error rule of Faught v. Washam, 329 S.W.2d 588 (Mo. 1959). This point was not raised in the motion for new trial and thus is not preserved for appeal. Rule 79.03, V.A.M.R.

Judgment affirmed.

BARDGETT, P. J., and DONNELLY, C. J., concur.

HOLMAN, J., not sitting.