Sharron ELLIS, et al.,
Plaintiffs-Appellants,

v.

UNION ELECTRIC COMPANY,
Defendant-Respondent.

No. 50897.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 12, 1987.

Richard M. Marshall, Clayton, for plaintiffs-appellants.

Martin J. Toft, Ann E. Buckley, Schlafly, Griesedieck, Toft & Virtel, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Presiding Judge.

Plaintiffs Sharron, Vonda and Carrie Ellis appeal from a judgment for defendant Union Electric in their action seeking damages for the wrongful death of Donald Ellis. They claim the trial court erred (1) in permitting defendant to state or imply that it had exceeded its duty with respect to its electric wires under the National Electric Safety Code; (2) by allowing defendant's expert witness to testify as he was not seasonably identified to plaintiffs prior to trial; (3) in allowing evidence of decedent's negligence as such was not pleaded as an affirmative defense, and further in instructing on contributory negligence; and (4) by permitting evidence that decedent did not call Union Electric to request the power be turned off or the line wrapped with insulating material where he was working. We reverse and remand.

This action was filed by the widow and children of Donald Ellis. Mr. Ellis had been hired by a homeowner to remove some black willow trees growing on an easement owned by defendant Union Electric. The trees had been trimmed some six months previously by a contractor hired by Union Electric, but the homeowner did not like their appearance. The preliminary stage of removal involved trimming the tree limbs, some of which extended above and below—but did not touch—defendant Union Electric's 7200 volt line.

On Monday, November 22, 1982, Ellis and his assistant Ricky Tidwell worked all day trimming the trees. When they left, Ellis tied his 40 foot aluminum ladder to the tree where he had been working. Tuesday it rained and they did not work. On Wednesday the weather cleared and Ellis and Tidwell returned to work. Ellis climbed the ladder and began to trim with his 15–17 foot aluminum pole saw.

The only eyewitness to the accident testified that he saw Ellis on the ladder working. He then looked away and when he looked up again several minutes later, the pole suddenly began to slip very slowly down. The further it slipped, the more control Ellis lost until the pole contacted the 7200 volt line. There was an orange flash, the pole turned cherry red and Ellis's body caught fire. The first paramedic on the scene, who arrived minutes after the electrocution, observed Ellis in the tree and immediately concluded he was dead.

Judgment was entered on a jury verdict for defendant. Further facts will be adduced as relevant to the disposition of each of plaintiffs' points of error.

Plaintiffs' first point is that the trial court erred in allowing defendant to state or imply that compliance with the National Electric Safety Code [NESC] discharged its duty under Missouri law. The evidence showed the 7200 volt line was approximately 10 feet higher than the applicable recommendation of the NESC. In opening statement, counsel for defendant stated "there is no specific standard in Missouri but there is a National Electrical Safety Code that's used as a guide and the people involved will talk about the guideline as 18 feet." The witnesses who testified concerning the NESC height standards uniformly described them as "minimum standards." Defendant's expert acknowledged this fact and added that other factors such as the existence of trees close to the line must be considered in determining safety. Plaintiffs do not contest the admissibility of the NESC as a "minimum standard" but they argue that defendant's repeated references to the Code misled the jury into believing that compliance with the Code discharged defendant's duty. We disagree.

Initially, we note that a generator and transmitter of electricity such as defendant is held to the highest duty of care and must either insulate or isolate its electric wires. *See Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 940–41 (Mo.App.1983). Indeed,

in light of this duty our Supreme Court has found that it would constitute "positive misdirection" to instruct the jury that compliance with height requirements under the NESC discharged the defendant electric company's duty under the law. *Gladden v. Missouri Public Service Co.*, 277 S.W.2d 510, 518 (Mo.1955).

■ Somewhat analogous to the instant case is *Freeman v. Kansas City Power and Light Co.*, 502 S.W.2d 277 (Mo.1973). There the defendant's attorney in opening statement said to the jury "there will be evidence that these lines were built to substantially exceed the minimum requirements of what is called the National Electrical Safety Code which has been accepted as the standard of Missouri." Plaintiffs' objection to this statement was overruled. The Supreme Court held this was error, but that it did not warrant reversal because witnesses testified the Code provisions were only minimum standards and because the jury was properly instructed to hold the defendant to the exercise of the highest degree of care. In the instant case the opening statement of defendant's attorney does not compare with the flagrant misstatement of law made by the defendant's attorney in *Freeman.* The evidence here unequivocally established the height requirements of the Code to be but minimum standards and that other factors had to be considered. The jury was properly instructed regarding defendant's duty. *Freeman* is controlling. Point denied.

Plaintiffs' second point on appeal charges trial court error in overruling their motion to exclude the testimony of defendant's expert witness. The lawsuit was commenced on June 24, 1983. On January 6, 1984, plaintiffs filed interrogatories requesting disclosure of expert witnesses defendant intended to use at trial. Defendant's response filed January 10, 1984, was "[a]t present defendant has not identified or consulted any expert witnesses." Rule 56.01(e)(1)(B) requires a party to "seasonably supplement his response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial and the

general nature of the subject matter on which the expert is expected to testify." The term "seasonably" is not defined in the Supreme Court Rule. Rule 32.6 of the local rules of the 21st Judicial Circuit provides: "[u]nless the Presiding Judge approves some later date, each party shall, not later than 10 days prior to the first trial setting, identify each person whom that party expects to call as an expert witness at trial."

The trial setting of this case was May 20, 1985. Defendant requested and was granted a continuance from this setting to make "discovery" of the two expert witnesses disclosed by plaintiffs' interrogatory answers. The case was reset for trial on June 24, 1985. Defendant again requested and was granted a continuance until August 5, 1985. On July 18, 1985, defendant filed a third motion for continuance alleging that both of its expert witnesses, Dr. J. Derald Morgan and Robert Kane, would be out of the state and unavailable for trial during the week of August 5, 1985. Plaintiffs opposed this motion and plaintiffs' attorney advised the court that he would "make himself available at any time, day or night, to take such depositions as are necessary to avoid conflicting with a person's vacation." The motion for continuance was denied. On July 23, 1985, defendant filed and mailed to plaintiffs' attorney supplemental answers to interrogatories naming expert witnesses it intended to use at trial, including Morgan and Kane. These supplemental answers were received by plaintiffs' attorney on July 26, 1985, six working days before the date of the third trial setting. No depositions were taken as Kane was in Ireland and Morgan was in New Mexico, Wyoming or travelling somewhere in between.

The case was assigned to a trial division on August 7, 1985. Plaintiffs, by written motion in limine, objected to the use of any expert testimony by defendant. The trial court overruled this motion before trial and again when the motion was renewed immediately prior to the testimony of Dr. Morgan, who was the only witness called by defendant as an expert in the field of electrical engineering. Morgan had returned

to St. Louis on August 10, 1985 and he testified on August 14, 1985.

Appellate courts give great deference to the exercise of trial court discretion regarding rulings on issues arising from pre-trial discovery and the determination of the appropriate course of action in the event of non-compliance with a discovery rule. *Manahan v. Watson*, 655 S.W.2d 807, 808 (Mo.App.1983); *McClanahan v. Deere & Co.*, 648 S.W.2d 222, 230 (Mo.App. 1983). We look only for an abuse of this broad discretion which results in prejudice or unfair surprise. *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 878–79 (Mo.App.1985). No absolute standard may be imposed because the infinite potential for variations in the degree of prejudice resulting from non-compliance with procedural rules requires consideration of the peculiar facts of each case. *State ex rel. State Highway Commission of Missouri v. Cool's Tall Tower Restaurant and Marina, Inc.*, 654 S.W.2d 224, 226 (Mo.App. 1983). Guided by these standards we consider the action of the trial court in overruling plaintiffs' objection to the testimony of Dr. Morgan.

Defendant concedes its failure to comply with the local rule, 32.6, mandating disclosure of experts of all parties no later than 10 days before the first trial setting. However, defendant argues that it should not be expected to select and identify an expert witness until it has discovered the engineering theory advanced by plaintiffs. Since plaintiffs did not disclose the identity of their expert until 20 days before the first trial setting, defendant argues it lacked sufficient time to ascertain the theories and opinions of the named expert witness and then to obtain a counter expert, disclose his identity and make him available for deposition by plaintiff. We agree that local rule 32.6 is unrealistic in providing for simultaneous disclosure of experts within a short time period before trial. However, our inquiry does not end with this observation.

The record before us indicates that plaintiffs responded to defendant's interrogatories regarding expert witnesses on May 15, 1985, five days before the trial setting. However, defendant concedes it was given this information by a letter dated April 29, 1985. Defendant obtained a continuance from the May 20, 1985 trial setting in order to take the deposition of the expert named by plaintiffs. The trial date was continued until June 24, 1985. The deposition of plaintiffs' expert was not set by defendant until June 12, 1985, and then, at defendant's request, continued until June 17, 1985. Defendant again obtained a continuance from the trial setting of June 24, 1985. Not until July 26, 1985, did plaintiffs' attorney receive notice that defendant intended to use Dr. Morgan as an expert witness at the trial then set for August 5, 1985. By that time Dr. Morgan had left the state and was unavailable for deposition. Therefore, the offer of plaintiffs' attorney to make himself available at any time in order to take the deposition could not be accepted. No explanation was given to the trial court or to us of the inability of defendant Union Electric Company to obtain the services of a qualified electrical engineer who was not travelling in New Mexico or Wyoming.

Several cases have addressed the question of "seasonable" supplementation of interrogatory answers identifying expert witnesses. In *McClahanan v. Deere & Co.*, 648 S.W.2d 222 (Mo.App.1983), the court found no abuse of discretion in the exclusion of the testimony of an expert witness whose identity was first disclosed four days before trial. Similarly, in *State ex rel. State Highway Commission of Missouri v. Cool's Tall Tower Restaurant and Marina, Inc.*, 654 S.W.2d 224 (Mo. App.1983) failure to disclose an expert witness until five days before trial was held to justify the trial court's exclusion of the expert testimony. In *Manahan v. Watson*, 655 S.W.2d 807 (Mo.App.1983), it was held the trial court had abused its discretion by permitting the testimony of an expert witness not disclosed until during the trial, even though the witness was first contacted by the party offering his testimony only after the trial had started. Trial court discretion was also upheld in *State ex rel. Missouri Highway and Transportation Comm'n v. Dooley*, —— S.W.2d —— (Mo.

App.1987). There, a new expert was disclosed by plaintiff two weeks before the trial date. The proposed witness was available for deposition during the interim, but defendant's attorney was otherwise engaged and refused to permit the witness to examine the property he was to evaluate until one day before trial. "Under these particular circumstances" this court found no abuse of discretion in permitting the testimony. The importance of examining the exercise of trial court discretion "under the totality of the circumstances" is emphasized in *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872 (Mo.App. 1985). Objection to the testimony of a nurse, unmentioned in answer to interrogatory, was overruled by the trial court with the caveat that "if the testimony of the nurse expert 'completely blindsides the plaintiff,'" the court would entertain a motion to strike. Since no such motion was made, the court concluded plaintiff was not prejudiced or unduly surprised by the testimony. *Id.* at 878–79.[1]

In the instant case, defendant seizes upon this element of the *Hurlock* decision and strenuously argues that plaintiffs have not demonstrated any surprise or prejudice from the testimony of Dr. Morgan. We do not believe that in order to show prejudice it is incumbent upon a party to demonstrate after the trial what would have been done before the trial were it not for his adversary's failure to comply with rules. Particularly with regard to expert witnesses, untimely disclosure or non-disclosure is so offensive to the underlying purpose and intent of discovery rules that prejudice may be inferred unless, under the circumstances of a particular case, such an inference is dissipated.

The complexities of contemporary litigation have caused a significant increase in the use of and the need for expert testimony. Indeed, most legal periodicals today contain pages of classified advertisements by professional expert witnesses offering to testify upon a myriad of subjects. Competent trial preparation requires identification of an adverse party's expert in sufficient time before trial to allow for investigation of the qualifications of the proposed expert, his opinions, conclusions and the basis therefor, his experience with the same or similar incidents, his relationship with the parties or their attorneys, the nature and extent of his prior experience as an expert witness, and the cases in which he has previously testified regarding the identical subject, among other matters. A competent lawyer's trial preparation usually entails consultation with a friendly expert regarding the opinions expressed by the adversarial expert in deposition. In the instant case, plaintiffs' attorney, by reason of defendant's belated disclosure that Dr. Morgan was to be an expert witness at trial, was deprived of the opportunity to undertake any of these measures. He was confronted with what can best be termed a trial lawyer's nightmare: the need to cross-examine an adversarial expert witness—an experienced testifier—with no means of anticipating or controlling the answers which might be given to his questions or of discrediting anything the witness might say. In most of the cases cited above, the mere denial of the opportunity to take the deposition of an untimely disclosed expert, without further explanation, has been noted as demonstrating sufficient prejudice to warrant the exclusion of the witnesses' testimony.

Accordingly, under all of the circumstances of this case, the disadvantage imposed upon the plaintiffs by reason of defendant's belated disclosure of an expert who was unavailable for pre-trial deposition required either the exclusion of the witness's testimony or a short delay of the trial to permit adequate preparation for discovery pertaining to his testimony. The infinite variety of situations which develop in pre-trial discovery renders impossible the adoption of a hard, fast rule designating exact and inflexible time limitations for disclosure of witnesses. For this reason the

---

1. The only issue before the appellate court in *Hurlock* was the submissibility of plaintiff's case, so the evidence adverse to the plaintiff, including the testimony of the nurse, was disregarded.

requirement of "seasonable" disclosure is not defined, but is left to the exercise of sound discretion in each case. Exercise of this discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage. As stated many years ago by Judge Lamm in *Jeude v. Sims*, 258 Mo. 26, 166 S.W. 1048, 1055 (1914) (dissenting opinion) "[c]ourt rules are mere ends to the attainment of justice, and are not to be twisted into instruments of injustice." Moreover, public conceptions notwithstanding, the effectiveness of our judicial system should be measured not by the efficiency with which it disposes of numbers of cases, but by the quality of justice it produces.

Plaintiffs' final points on appeal regarding the failure of defendant to plead contributory negligence or comparative fault will not arise on re-trial.

The judgment is reversed and the cause is remanded for re-trial.

STEPHAN and SIMON, JJ., concur.