Tim **HEIFNER** and Marcia Heifner, Respondents,

v.

**SYNERGY GAS CORPORATION,** Appellant.

No. 18511.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 9, 1994.

Thomas R. Larson, Watson, Ess, Marshall & Enggas, Kansas City, Bruce Taylor, Taylor & Taylor, Neosho, for appellant.

Robert W. Evenson, Evenson, Carlin & LePage, Pineville, for respondents.

CROW, Judge.

On June 24, 1988, Tim Heifner and Ronald Tune were burned in a propane gas explosion and fire. They had obtained the propane earlier that day at 71 Truck Stop, which had bought it from Synergy Gas Corporation ("Synergy").

Tune sued Synergy. Heifner and his wife, Marcia, also sued Synergy.

Tune's suit was tried first. He won. Synergy appealed. In *Tune v. Synergy Gas Corporation*, (Mo. banc, 1994), 883 S.W.2d 10, the Supreme Court of Missouri affirmed the judgment except the damage award, which was reversed. The Supreme Court remanded for a new trial on that issue alone.

The Heifners also won their suit. The jury: (a) assessed 100 percent fault against Synergy, (b) found Tim's damages to be $170,000, and (c) found Marcia's damages to be $25,000.

The trial court allowed Synergy a $47,500 credit against Tim's damage award for sums received earlier by him from other parties with whom he had settled. The trial court allowed Synergy a $10,000 credit against Marcia's damage award for sums received earlier by her from other parties with whom she had settled. After those credits, the trial court added prejudgment interest, producing a judgment for $130,555.66 in favor of Tim and $15,995.64 in favor of Marcia.

Synergy brings this appeal from that judgment, presenting four assignments of error.

As in *Tune*, the Heifners ("Plaintiffs") submitted their claim on strict liability—failure to warn.[1] Synergy's first point relied on maintains the trial court erred in denying Synergy's motion for a directed verdict in that Plaintiffs failed to make a submissible case on that theory. Specifically, asserts Synergy:

"(A) The product sold by ... Synergy ... was substantially modified and made unsafe because the propane sold by Synergy ... was sold only to 80% capacity of the tank to which it was added, but when it was sold by 71 Truck Stop to Plaintiff it was modified by filling the cylinder to 100%;

(B) there was no expert testimony that a warning would have made the propane reasonably safe;

(C) the evidence failed to establish that any of the warnings demanded by Plaintiff could have prevented the accident herein."

The evidence in *Tune*, viewed favorably to the verdict, is set forth in the Supreme Court's opinion. The evidence in the instant case, viewed favorably to the verdict, was essentially the same as in *Tune*. Therefore, we shall not repeat the evidence in this opinion, but instead shall set forth only the evidence peculiar to this case where necessary to address Synergy's claims of error.

Synergy's first point in *Tune*, like its first point here, asserted the trial court should have directed a verdict for Synergy because the evidence failed to make a submissible case on strict liability—failure to warn. Like its first point here, Synergy's first point in *Tune* had three paragraphs, designated "(A)," "(B)," and "(C)."

Paragraph "(A)" of Synergy's first point in *Tune* is a twin of paragraph "(A)" of Synergy's first point here (quoted above). In its brief, Synergy concedes paragraphs "(A)" in *Tune* and here are "virtually identical" except for "applicable transcript references."

The Supreme Court rejected paragraph "(A)" in *Tune*. 883 S.W.2d at 14. We are constitutionally controlled by that ruling. *Smith v. St. Louis Public Service Co.*, 364 Mo. 104, 259 S.W.2d 692, 694[1] (banc 1953); Mo.Const., Art. V, § 2 (1945). Accordingly, we deny paragraph "(A)" of Synergy's first point.

Paragraph "(B)" of Synergy's first point is not identical to paragraph "(B)" in *Tune*. As we understand paragraph "(B)," Synergy's premise is that in order to make a submissible case of strict liability—failure to warn, Plaintiffs had to present "expert testimony" that a warning "would have made the propane reasonably safe."

Of course, a warning would not alter the dangerous nature of propane. It would be as inherently dangerous after the warning as before. However, an adequate warning would alert a sensible, but unexpert, user about the danger and enable him to take precautions to minimize the risk.

Synergy insists, "[T]here is no causal relationship between Synergy's asserted failure to warn and the accident in this case." However, the Supreme Court held in *Tune* that if

---

1. Plaintiffs' verdict-directing instruction (Instruction 5), MAI 25.05 [1978 New], modified by MAI 37.01 [1986 New], (4th ed. 1991) read:

"In your verdict you must assess a percentage of fault to defendant if you believe:

First, defendant sold the propane gas in the course of defendant's business, and

Second, the propane gas was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and

Third, defendant did not give an adequate warning of the danger, and

Fourth, the product was used in a manner reasonably anticipated, and

Fifth, plaintiff was damaged as a direct result of the propane gas being sold without an adequate warning."

there is sufficient evidence from which a jury could find that the injured person did not already know the danger, there is a presumption that a warning will be heeded. 883 S.W.2d at 14.

Tim testified he did not know heat made propane expand or that it was dangerous to overfill a propane tank, as the gas might escape. That testimony gave rise to a presumption that a warning would have been heeded. 883 S.W.2d at 14.

The Supreme Court in *Tune* declined to adopt a rule requiring expert testimony to make a submissible case in every "failure to warn" action. 883 S.W.2d at 14. Paragraph "(B)" of Synergy's first point is without merit.

Paragraph "(C)" of Synergy's first point is identical to paragraph "(C)" in *Tune*. Additionally, Synergy's argument following paragraph "(C)" in both cases is virtually identical, except for inconsequential evidentiary variances. The authorities cited by Synergy in support of paragraph "(C)" are the same in each case.

The Supreme Court rejected paragraph "(C)" in *Tune*. 883 S.W.2d at 14. Accordingly, we deny paragraph "(C)" here.

█ Synergy's second point assigns error in the trial court's refusal to give Instruction C, tendered by Synergy. Instruction C read:

> "The issue of the Defendant's failure to properly train Lonnie Culp is withdrawn from the case and you are not to consider such issue in arriving at your verdict."

Culp was "the attendant at 71 Truck Stop," referred to in *Tune*. 883 S.W.2d at 12. One of the theories of liability pled by Plaintiffs was that Synergy failed to train Culp as to the method and procedure for filling portable liquid propane tanks so as to ensure the tanks would not be overfilled. During Plaintiffs' case, the following stipulation was read to the jury by agreement:

> "Synergy Gas has a responsibility to make sure that retail customers, such as 71 Truck Stop, know how to safely dis-

pense propane. After acquiring Granby Gas on May 12, 1988, no safety visits were made by Synergy Gas officers, employees, or agents, to the 71 Truck Stop. Nor were any safety materials delivered to the truck stop by anyone on behalf of Synergy Gas, Inc., prior to June 24, 1988."

Plaintiffs presented evidence that Synergy should have trained Culp about filling propane cylinders and the dangers of overfilling. One of Plaintiffs' witnesses testified that Culp's statement to Tim and Tune that he (Culp) was giving them a good deal demonstrated he: (a) thought the reason for not overfilling a propane tank was to avoid giving away free gas, and (b) did not understand the danger inherent in overfilling.

Excerpts from Culp's deposition (presented by Synergy) gave no indication Culp had been trained that the odorant in propane could fade or that there was a danger that propane in an overfilled cylinder could expand because of heat, escape, and ignite.

As reported earlier, Plaintiffs submitted their claim to the jury on strict liability—failure to warn, not negligent failure to train. Synergy maintains that when Plaintiffs abandoned the latter theory, the evidence regarding it "was irrelevant and a false issue."

We disagree. As Plaintiffs point out, because Culp was unaware of the possibility of odor fade and had not been trained about the consequences of overfilling a propane cylinder, he could not warn buyers about the danger arising therefrom. Consequently, the evidence about failure to train was inseparable from the "failure to warn" issue.

█ It is the general rule in a jury case that where evidence is admissible for one purpose or one issue, but inadmissible for other purposes or other issues, it should be received, and the objector then has the right to an instruction, if he requests it, limiting the extent to which and the purpose for which the jury may consider such evidence. *Dyer v. Globe–Democrat Publishing Co.*, 378 S.W.2d 570, 581[7] (Mo.1964).

Synergy did not tender an instruction limiting the extent to which, and the purpose for which, the jury could consider the "failure to train" evidence after Plaintiffs elected to go

to the jury on strict liability—failure to warn. Instead, Synergy tendered Instruction C withdrawing the issue of its failure to properly train Culp in its entirety.

■ Giving a withdrawal instruction is within the discretion of the trial court. *Anglim v. Missouri Pacific Railroad Co.,* 832 S.W.2d 298, 308[27] (Mo. banc 1992). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448[2] (Mo. banc 1976). If reasonable persons can differ about the propriety of the action taken by the trial court, it cannot be said the trial court abused its discretion. *Id.*

Inasmuch as the "failure to train" evidence could have aided the jury in determining whether, given propane's inherently dangerous nature, Synergy failed to give an adequate warning, we hold the trial court did not abuse its discretion in refusing Instruction C. Synergy's second point is denied.

■ Synergy's third point charges the trial court with error in rejecting two items of evidence offered by Synergy. The first was a videotape designated Exhibit O. Synergy offered it on the third day of trial during Synergy's case-in-chief. Synergy's lawyer described it as a videotape "of a hundred-pound cylinder filled to the top with ... liquid propane." Synergy's lawyer represented that the cylinder had a "Rego" pressure relief valve "of the exact same model" as the cylinder used by Tim and Tune.

According to Synergy's lawyer, Exhibit O showed a "demonstration" conducted in Denver during which the cylinder was heated with hot (120–degree) water from a hose. Synergy's lawyer declared that Exhibit O showed the valve "hisses" when the cylinder is heated.

Plaintiffs' lawyer stated the temperature of the cylinder was elevated "within two minutes or three," whereas the temperature of the cylinder used by Tim and Tune rose gradually over two to three hours. Plaintiffs' lawyer protested: "What [Exhibit O] shows is if you put hot water on that, and raise it immediately, within three or four minutes, that it's going to pop off. And I think every expert that's testified here would say that."

Plaintiffs' lawyer also objected to Exhibit O because it was made after he took the deposition of Synergy's expert, one week before trial. Plaintiffs' lawyer recounted: "I asked him if he planned on any experiments, and he didn't think he was. He apparently did this two days later." Plaintiffs' lawyer stated he received notice of the "experiment" either four or two days before trial, too late to "depose this expert witness as to the particulars of the experiment." Plaintiffs' lawyer received Exhibit O the day before trial.

The trial court characterized the experiment as "a last minute thing," conducted without "giving opposing counsel an opportunity to meet it." The trial court sustained Plaintiffs' objection to Exhibit O.

Synergy maintains Exhibit O was admissible in that the demonstration was "conducted under conditions substantially similar to the conditions which prevailed at the time of [the] accident." However, Synergy says nothing in response to Plaintiffs' objection that the experiment was conducted after Plaintiffs took the expert's deposition a week before trial and was not disclosed in time for Plaintiffs to prepare to counter it.

■ A trial court is vested with broad discretion as to its choice of a course of action during trial when the introduction of evidence is challenged on the ground that it has not been disclosed in response to appropriate discovery; in the sound exercise of that discretion it may receive or reject such evidence, or determine and impose other appropriate sanctions. *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 879 (Mo.App.W.D.1985); *Aulgur v. Zylich,* 390 S.W.2d 553, 556 (Mo.App.1965). As explained in *Ellis v. Union Electric Co.,* 729 S.W.2d 71, 75–76 (Mo.App.E.D.1987), the requirement of "seasonable" disclosure is not defined, but left to the exercise of sound discretion in each case. Exercise of such discretion should be directed toward the ac-

complishment of fundamental fairness and the avoidance of unfair disadvantage. *Id.*

Because of the lateness of the disclosure, Plaintiffs had no realistic opportunity to investigate the effect of the differences between the experiment and the conditions that existed at the time of the explosion. Those differences included a difference in elevation of the respective sites above sea level (some 4,000 feet according to the transcript), a difference in weather conditions, a difference in the amount of time involved in raising the temperatures of the respective cylinders, and a difference between the age and condition of the respective cylinders.

Under the totality of the circumstances, we cannot convict the trial court of abusing its discretion in rejecting Exhibit O. *See: Richardson v. State Highway & Transportation Commission,* 863 S.W.2d 876, 882[21] (Mo. banc 1993), where the court upheld a trial judge's rejection of a "simulation" of an accident, noting the objecting parties had no notice of it until the last business day before trial, thereby limiting their ability to cross-examine. We hold the trial court's rejection of Exhibit O in the instant case was not reversible error.

 The other item of evidence mentioned in Synergy's third point is a "demonstration" Synergy offered to present in the courtroom. According to Synergy's lawyer, it involved a nitrogen bottle, a regulator, and "a little 20–pound propane cylinder with a pop-off valve." Synergy's lawyer told the trial court a witness would testify "that the pop-off valves are all of identical configuration." The purpose of the demonstration, said Synergy's lawyer, was to show the jury "the noise made by the relief valve."

Plaintiffs' lawyer objected: "I've never seen the exhibits. I had no knowledge of this until just this moment."

The trial court commented: "... this is unusual. This is quite unusual to come in the latter part of a trial, and spring these surprises of this nature." The trial court added: "It doesn't look to me like it's a controlled and precise enough experiment to really be very similar to the conditions that existed there. And it doesn't seem right to

me. It's not a proper way to conduct a trial." The trial court denied Synergy's request to present the demonstration.

Plaintiffs point out that the proposed demonstration differed in several respects from the conditions that existed at the time of the explosion. The differences included: (a) using nitrogen, a gas, instead of propane which escaped in liquid form, then vaporized, (b) using a 20–pound cylinder instead of a 100–pound cylinder, and (c) using a pop-off valve instead of a pressure relief valve like the one on Tim's cylinder.

 Experimental evidence is admissible when the experiment was made under conditions substantially similar in essential particulars to the conditions which prevailed at the time of the occurrence in suit; the conditions need not be identical. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 610[9] (Mo. banc 1977). The proponent of experimental evidence has the burden of presenting a foundation showing the test, in material aspects, has the requisite similarity to the conditions or occurrences at issue in the suit. *Porter v. Erickson Transport Corp.,* 851 S.W.2d 725, 739[12] (Mo.App.S.D.1993); *Lawson v. Schumacher & Blum Chevrolet, Inc.,* 687 S.W.2d 947, 954[8] (Mo.App.S.D. 1985). In determining the question of sufficient similarity, a substantial measure of discretion must be accorded the trial judge. *Blevins,* 551 S.W.2d at 610[11].

In view of (1) the differences between Synergy's proposed "demonstration" and the conditions existing at the time of the incident in suit, and (2) the lack of disclosure, we hold the trial court did not abuse its discretion in barring the demonstration. Synergy's third point is without merit.

Synergy's final point reads:

"The trial court erred in refusing Synergy's offer of proof ... that [Plaintiffs] had settled with 71 Truck Stop or had abandoned pleadings claiming liability on the part of 71 Truck Stop because such evidence is relevant and avoids confusing the jury."

During its case-in-chief, Synergy sought permission to read to the jury various allegations from Plaintiffs' "first amended peti-

tion." The specific allegations were identified to the trial court by Synergy's lawyer at pages 763–64 in the transcript. As we deduce it, those allegations undertook to plead theories of liability against parties with whom Plaintiffs had settled before trial.

The first flaw in Synergy's final point is that Plaintiffs' first amended petition is not in the legal file. This Court is confined to the record presented to it. *State ex rel. Kairuz v. Romines,* 806 S.W.2d 451, 453[1] (Mo.App.E.D.1991); *Williams v. Clean Coverall Supply Co., Inc.,* 613 S.W.2d 659, 664[10] (Mo.App.E.D.1980). An appealing party desiring review of an issue has the duty to furnish all records relating thereto, and in the absence of such there is nothing for review. *Keesee v. Meadow Heights R–II School Dist.,* 865 S.W.2d 818, 824[5] (Mo.App. S.D.1993); *York v. Missouri Pacific Railroad Co.,* 813 S.W.2d 61, 62[2] (Mo.App.E.D. 1991). Inasmuch as Synergy has failed to include Plaintiffs' first amended petition in the record, we are unable to consider Synergy's complaint about the trial court's refusal to allow Synergy to read excerpts from it.

The second flaw in Synergy's final point is that we find no specific offer of proof at trial concerning Plaintiffs' settlement with 71 Truck Stop. The pages in the transcript cited by Synergy pertain to only Synergy's offer of allegations from Plaintiffs' first amended petition. No offer of proof regarding settlement appears on those pages.

Subject to a narrow exception inapplicable here, an appellate court will not review excluded evidence without a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 883[14] (Mo. banc 1985). That is in harmony with the rule that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982), appeal dismissed, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

Even had Synergy made an offer of proof regarding Plaintiffs' settlement with 71 Truck Stop, Synergy cites no authority demonstrating such proof should have been received. Synergy concedes *Iseminger v. Holden,* 544 S.W.2d 550 (Mo. banc 1976), which it cites, does not support admissibility.

In *Carter v. Tom's Truck Repair, Inc.,* 857 S.W.2d 172 (Mo. banc 1993), the court considered the admissibility of "Mary Carter agreements." As we understand Synergy's brief, it does not contend Plaintiffs' "settlement" with 71 Truck Stop involved such an agreement. Consequently, *Carter* does not aid Synergy.

Synergy's final point is denied, and the judgment is affirmed.

PREWITT, J., concurs.

GARRISON, J., concurs and files concurring opinion.

GARRISON, Judge, concurring.

I concur in the principal opinion and write separately only with reference to Synergy's second point relied on. The principal opinion concludes that failure of the trial court to give the requested Instruction C withdrawing "[t]he issue of the Defendant's failure to properly train Lonnie Culp" was not error.

Culp was not an employee of Synergy and therefore this is not a case in which Synergy has vicarious liability for his conduct. Likewise, Plaintiffs did not submit the case on a negligence theory. Rather, this case was submitted on a theory of strict liability—failure to warn. As I understand the principal opinion, the failure to train Culp could have been relevant to that issue. I agree. In *Donahue v. Phillips Petroleum Co.,* 866 F.2d 1008 (8th Cir.1989), the court said:

> ... even a bulk supplier must provide adequate instructions to the distributor next in line or ascertain that the distributor is informed as to the nature of the product and is in a position to convey the information so that the ultimate consumer is apprised of the dangerous propensity of the product.

*Id.* at 1012. 3 *American Law of Products Liability 3d* § 33:28 (John D. Hodson et al. eds., Rev. 1993) states:

> A supplier who sells to an intermediary in bulk ... can discharge its duty to warn ultimate users (including employers) if it

provides adequate instructions to the distributor next in line or ascertains that the intermediary is adequately trained, is familiar with the properties of the product and safe methods of handling it, and is capable of passing on the information so that the ultimate consumer is apprised of the dangerous propensity of the product.