866 F.2d 1008
 27 Fed. R. Evid. Serv. 402, Prod.Liab.Rep.(CCH)P 12,037
Kay Lynn DONAHUE, Michael Donahue and Ronald F. Donahue, Appellees,
v.
PHILLIPS PETROLEUM COMPANY, Appellant.
Kay Lynn DONAHUE, Michael Donahue and Ronald F. Donahue, Appellants,
v.
PHILLIPS PETROLEUM COMPANY, Appellee.
 Nos. 88-1151, 88-1177.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 21, 1988.
Decided Jan. 26, 1989.
Rehearing and Rehearing En Banc Denied in No. 88-1151 April 21, 1989.
 
 Glenn A. Burkart, Springfield, Mo., for appellants.
 James C. Wirken, Kansas City, Mo., for appellees.
 Before HEANEY, Circuit Judge, ROSS, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This product liability case was tried to a jury, which returned verdicts in favor of each plaintiff and awarded them compensatory damages. The District Court[1] denied the motions of defendant Phillips Petroleum Company (hereinafter Phillips) for judgment notwithstanding the verdict or for a new trial, and entered judgment on the jury verdicts. Phillips appeals, contending that the District Court erred in submitting plaintiffs' case to the jury, in admitting certain evidence, and in instructing the jury. Plaintiffs cross-appeal, contending they are entitled to a new trial because the District Court erred in refusing to instruct the jury on punitive damages and in refusing to admit certain evidence proffered on that issue. We affirm the District Court's judgment in all respects.
 
 
 2
 Plaintiffs Kay Donahue and Ronald Donahue were injured in a propane gas explosion as Ronald was attempting to light a propane fueled water heater. The heater was located in the basement of a home owned by Gladys Wilson and occupied by the Donahues. The liquid propane (LP) gas used to fuel the water heater and other household appliances was stored in a gas holding tank. That holding tank as well as the LP gas had been purchased from Smallwood Skelgas Company, a retailer located in Carthage, Missouri.[2] Smallwood purchased the LP gas from Ferrellgas Company, which in turn had purchased the gas from Williams Pipeline Company.
 
 
 3
 Because LP gas is odorless, it is combined with a chemical which produces an odor to alert the user when LP gas has escaped. Williams Pipeline used a chemical known as ethyl mercaptan to odorize the LP gas it supplied. Williams Pipeline purchased the ethyl mercaptan from Phillips, which obtained it from one or both of its two suppliers.
 
 
 4
 Kay and Ronald Donahue, along with Kay's husband Michael Donahue, brought suit in state court against several defendants, including Phillips. Following removal to federal court, the case was tried to a jury, which returned the verdicts mentioned above in favor of each plaintiff against Phillips.[3] Both parties filed post-trial motions, all of which were denied by the District Court. This appeal and cross-appeal followed.
 
 I.
 
 5
 Phillips argues that the District Court should have directed a verdict in its favor at the close of all of the evidence (or should have granted its motion for judgment notwithstanding the verdict) because plaintiffs failed to make a submissible case. Plaintiffs submitted the case against Phillips under two strict liability theories--defective product and failure to warn. Plaintiffs' case was based on their allegation that the ethyl mercaptan distributed by Phillips had lost its distinctive odor and did not serve its purpose as a warning agent, and on their further allegation that Phillips had not warned anyone that ethyl mercaptan has this dangerous propensity, under certain conditions, to lose its odor. We conclude that the evidence supported submission of plaintiffs' case to the jury.
 
 
 6
 In Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362 (Mo.1969), the Supreme Court of Missouri adopted the Second Restatement formulation of strict liability in tort for the distribution of a product in a defective condition:
 
 
 7
 (1) One who sells any product in a defective condition [un]reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 8
 (a) the seller is engaged in the business of selling such a product, and
 
 
 9
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 10
 (2) The rule stated in Subsection (1) applies although
 
 
 11
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 12
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 
 
 13
 445 S.W.2d at 364 (quoting Restatement (Second) of Torts Sec. 402A). Phillips argues that "the record is conspicuously silent as to the condition of the product when it left the hands of Phillips" (Appellant's Brief at 17) and that therefore plaintiffs failed to prove that the ethyl mercaptan was defective when sold by Phillips.
 
 
 14
 Phillips' argument misses the point of plaintiffs' claim. Plaintiffs did not need to prove that the odor of the ethyl mercaptan had faded at the time it left the hands of Phillips. Rather, their defective product claim was based on the nature of the ethyl mercaptan--its propensity to oxidize and lose its odor in certain circumstances. That characteristic, as an inherent property of the product, was indisputably present at the time Phillips supplied the product to the company next in line in the chain of distribution.[4] Accordingly, we believe there was ample evidence from which the jury could conclude that the product was in a defective condition at the time it left the hands of Phillips.
 
 
 15
 The cases cited by Phillips on this point are inapposite. For example, Williams v. Ford Motor Co., 494 S.W.2d 678 (Mo.Ct.App.1973), and Porter v. C.A. Dawson & Co., 703 F.2d 290 (8th Cir.1983), state the well-established principle that a supplier is not liable when it delivers a product in a safe condition but subsequent mishandling renders the product defective. That principle is inapplicable here. Plaintiffs' claim is that the utility of ethyl mercaptan as a warning agent is compromised by its tendency to fade when oxidized, and that it therefore is a dangerous product when sold for use as a warning agent in propane gas. Moreover, product distributors are liable under Missouri law for injuries caused even by foreseeable misuses of their products. See Laney v. Coleman Co., 758 F.2d 1299, 1302 (8th Cir.1985). We hold that the District Court properly submitted the defective product theory to the jury.[5]
 
 
 16
 The District Court also properly submitted the strict liability failure to warn claim to the jury. In Racer v. Utterman, 629 S.W.2d 387 (Mo.Ct.App.1981), appeal dismissed and cert. denied sub nom. Racer v. Johnson & Johnson, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982), the Missouri Court of Appeals explained the nature of this cause of action:
 
 
 17
 Based upon comment j [to Restatement (Second) Sec. 402A], there has arisen a doctrine of strict liability for failure to warn. Comment k makes it apparent that the obligation to warn is applicable to "unavoidably unsafe" products.... MAI 25.05 (1978) recognizes the existence of a strict liability failure-to-warn cause of action....
 
 
 18
 ....
 
 
 19
 In this state, as in most others, the courts have treated strict liability in tort as a doctrine which looks to the product not to the conduct of the manufacturer or seller.... We are unable to see ... why a product dangerous because of an absence of warning, should receive different treatment than a product manufactured with the greatest of care which contains a defect unknown to the manufacturer.... [We] recognize that strict liability is not a traditional cause of action as it now exists and that knowledge, fault or conduct of the defendant is simply no longer relevant. Strict liability in tort imposes a duty on the manufacturer not to introduce into commerce an unreasonably dangerous product--whether that danger arises from defective manufacture, defective design, or failure to warn of danger. The breach of that duty occurs by the act of introducing such product into commerce. That is the only conduct which is relevant to the manufacturer's breach of duty.
 
 
 20
 Id. at 393, 395 (citations omitted).
 
 
 21
 Phillips advances two arguments to support its position that it was error for the District Court to submit the case to the jury on a strict liability failure to warn theory.[6] Phillips's first argument tracks its argument on the product defect theory: Phillips contends that it had no duty to warn because the product was neither latently dangerous when used as anticipated nor unavoidably unsafe. See Kontz v. K-Mart Corp., 712 F.2d 1302, 1304 (8th Cir.1983). Phillips then argues that warnings are impractical given the nature of the product and the way in which it is marketed. We disagree with both arguments.
 
 
 22
 Under Missouri law, a distributor of a product may be strictly liable for damages resulting from the use of any product that it puts on the market without a warning, when the lack of warning renders the product unreasonably dangerous. See Racer, 629 S.W.2d at 395. Here, plaintiffs adduced evidence that the ethyl mercaptan, which was distributed by Phillips without giving any warning to anyone that it might be ineffective if oxidized, was unreasonably dangerous when used as an odorizing agent in LP gas. The fact that it might logistically be difficult to disseminate a warning does not undercut the strict liability analysis, which focuses on the condition of the product rather than the conduct of the defendant.
 
 
 23
 Moreover, it is not, as Phillips suggests, impossible to warn as to the possibility of odor fade. Indeed, Phillips's assertion is belied by its own brochure explaining the danger, which was prepared after the accident involved here and was introduced into evidence on this issue. (See part III of this opinion, in which we hold that this brochure was properly admitted.) Phillips made no effort to discharge its obligation by contracting with its purchaser to ensure that adequate warnings ultimately reach the consumer.
 
 
 24
 Under Missouri law, "[u]nless a court can say as a matter of law that a product is not more dangerous than a reasonable user would have expected, the question is one for the jury." Grady v. American Optical Corp., 702 S.W.2d 911, 915 (Mo.Ct.App.1985) (strict liability failure to warn case). We conclude that the District Court properly ruled that the evidence justified the submission of plaintiffs' strict liability failure to warn case to the jury.
 
 II.
 
 25
 Phillips also contends that the District Court erred in instructing the jury on plaintiffs' strict liability failure to warn theory and in refusing to give another instruction it offered which incorporated the "bulk supplier" and "sophisticated user" doctrines.[7] Phillips asserts that because it is a bulk supplier of ethyl mercaptan, its "duty to warn"[8] of any dangerous propensities of that product extended only to its immediate purchaser, Williams Pipeline, which is already "sophisticated" as to the nature of the product. Phillips's argument combines the "bulk supplier" doctrine and the "sophisticated user" doctrine, both of which create exceptions to the general obligation of a distributor to supply warnings.
 
 
 26
 Based on Sec. 388 of the Restatement (Second), the Missouri Supreme Court has held that a bulk supplier may warn its immediate purchaser "with the intention that such warning be given the ultimate consumer." Morris v. Shell Oil Co., 467 S.W.2d 39, 42 (Mo.1971) (negligence case). However, even a bulk supplier must provide adequate instructions to the distributor next in line or ascertain that the distributor is informed as to the nature of the product and is in a position to convey the information so that the ultimate consumer is apprised of the dangerous propensity of the product. See Restatement (Second) of Torts Sec. 388 comment n (1965); cf. Jones v. Hittle Service, Inc., 219 Kan. 627, 549 P.2d 1383, 1394 (1976) (applying Kansas law). Based on the evidence, it is clear that Phillips did not fulfill this obligation. The bulk supplier doctrine therefore does not apply.
 
 
 27
 Nor does the "sophisticated user" doctrine apply to this case. In Missouri, that doctrine has been used to protect a distributor from strict liability for failure to warn when "the user of a product knows or reasonably may be expected to know of a particular danger." Grady, 702 S.W.2d at 915 (citing Duke v. Gulf & Western Manufacturing Co., 660 S.W.2d 404, 418 (Mo.Ct.App.1983)) (emphasis added). In Grady, the court rejected the defendant-manufacturer's argument that the dangerous propensity of its product was "a matter of common knowledge" and concluded that the record did not demonstrate "that the danger was so obvious as to have relieved defendants of their duty to warn the user." Id. at 915-16. The same observation is equally applicable in the present case. Even if Williams Pipeline could be viewed as a sophisticated user (a proposition that, based on the evidence in this case, strikes us as being extremely doubtful), the ultimate users were the Donahues, and there is no evidence whatsoever that they either knew or could reasonably have been expected to know of ethyl mercaptan's propensity toward odor fade.
 
 
 28
 Phillips proposes that the "sophisticated user" doctrine be invoked in tandem with the "bulk supplier" doctrine to excuse it from strict liability because it claims that its immediate purchaser should have known of the dangers of the product. We are persuaded that Missouri law does not authorize such an approach, which effectively would undercut the strict liability analysis set forth in Racer.[9] We accordingly conclude that the District Court properly declined to submit Phillips's tendered instruction D to the jury, and that the Court's instructions on plaintiffs' strict liability failure to warn theory were proper and supported by the evidence.
 
 III.
 
 29
 Phillips contends the District Court erred in admitting into evidence a brochure explaining the possibility of odor fade that was prepared by Phillips subsequent to the accident. Phillips relies on Rule 407 of the Federal Rules of Evidence, which prohibits the introduction of evidence of subsequent remedial measures to demonstrate the negligence or culpable conduct of defendant. It has long been the law of this Circuit that Rule 407 does not preclude the introduction of evidence of subsequent remedial measures in a strict liability case. See, e.g., Unterburger v. Snow Co., 630 F.2d 599, 603 (8th Cir.1980); Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 793 (8th Cir.1977) ("Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct."). However, in DeLuryea v. Winthrop Laboratories, 697 F.2d 222, 229 (8th Cir.1983), we held that Rule 407 should apply in the special strict liability failure to warn case involving a drug which is unavoidably unsafe. Phillips urges the Court to order a new trial on the ground that under DeLuryea the District Court's admission of the subsequent remedial evidence in this case was erroneous. We disagree.
 
 
 30
 Phillips contended at trial, and now contends on appeal, that it was not feasible to provide warnings. This distinguishes the case from DeLuryea, in which the pivotal issue was the adequacy of the warning that had been given by the defendant, the manufacturer of a useful and effective yet unavoidably dangerous drug. See Kehm v. Procter & Gamble Manufacturing Co., 724 F.2d 613, 621 (8th Cir.1983). Assuming that Rule 407 is applicable to this case,[10] the rule itself permits the introduction of evidence of subsequent remedial measures for the purpose of demonstrating feasibility. We conclude that the District Court properly admitted the challenged evidence.
 
 IV.
 
 31
 Plaintiffs' cross-appeal challenges the District Court's decision not to submit their claims for punitive damages to the jury, and its refusal to admit into evidence a letter written in 1961 by an employee of the Liquefied Petroleum Gas Association (LPGA) which they argue demonstrates Phillips's awareness of the odor fade problem. We find no error.
 
 
 32
 Missouri law requires that "some element of wantonness or bad motive" be present to justify the imposition of punitive damages. See Roth v. Black & Decker, U.S., Inc., 737 F.2d 779, 781 (8th Cir.1984) (quoting Vanskike v. ACF Indus., Inc., 665 F.2d 188, 208-09 (8th Cir.1981), cert. denied sub nom. St. Louis-San Francisco Ry. v. Vanskike, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (applying Missouri law)). To recover punitive damages in a strict products liability case, a plaintiff must show that "the defendant knew of the alleged defective condition and danger at the time the defendant sold the product and ... the defendant thereby showed complete indifference to or conscious disregard for the safety of others." Laney, 758 F.2d at 1304; see Missouri Approved Jury Instruction (MAI) 10.04 (3d ed. Supp.1987). Constructive knowledge is not enough. Laney, 758 F.2d at 1304.
 
 
 33
 Assuming arguendo that the 1961 letter indeed was admissible, an issue we need not decide,[11] we have considered the letter and we conclude that it would not have shown that Phillips acted with the degree of wantonness necessary to justify an award of punitive damages. At most, the letter indicates that the LPGA had some concerns about the possibility that the odor of ethyl mercaptan might fade in certain circumstances. Even with the letter, we hold as a matter of law that the evidence would not warrant a conclusion that Phillips acted with complete indifference to or conscious disregard for the safety of others. See Racer, 629 S.W.2d at 396-97. We therefore conclude that the District Court was correct in refusing to submit the issue of punitive damages to the jury.
 
 
 34
 The judgment of the District Court is affirmed.
 
 
 35
 ROSS, Senior Circuit Judge, dissenting.
 
 
 36
 I respectfully dissent. The majority holds that Phillips' duty to warn the Donahues was properly submitted to the jury. It reaches this conclusion despite the fact that Phillips sold its product in huge storage tanks to Williams Pipeline; despite the fact that Williams Pipeline had been in the propane business for more than thirty years, had sophisticated chemists on its staff who knew that hydrocarbons (of which ethyl mercaptan is one) had a tendency to oxidize, and possessed material safety data sheets furnished by Phillips listing oxidizing materials incompatible to ethyl mercaptan as part of an employee safety manual; and despite Ronald Donahue's testimony that he smelled a fleeting "faint whiff" of what he identified as LP gas on the stairs to the basement of the farmhouse the day before the explosion. I cannot agree that the bulk supplier/learned intermediary doctrine does not apply in Missouri and would reverse and remand the case with directions to submit Phillips' tendered instruction D to the jury.
 
 
 37
 Other jurisdictions have applied the bulk supplier/learned intermediary defense in this situation. See Parkinson v. California Co., 255 F.2d 265, 268-69 (10th Cir.1958) (defendant manufacturer's evidence, inter alia, that literature and trade publications read by or available to propane retailers contained information on chemical reaction sufficient where retailers knew, or in the exercise of reasonable diligence should have known, that reaction could possibly destroy propane's odor); Jones v. Hittle Serv., Inc., 219 Kan. 627, 549 P.2d 1383, 1394 (1976) (where product is sold in bulk, manufacturer fulfills duty to ultimate customer when he ascertains that distributor is adequately trained, is familiar with properties of gas and safe methods of handling, and is capable of passing on his knowledge to customers); Hendrix v. Phillips Petroleum Co., 203 Kan. 140, 157, 453 P.2d 486, 499 (1969) (it was Phillips' duty to ascertain that intermediary had been instructed to extent that it had reasonable knowledge under the circumstances, including ability to give appropriate advice to customers).
 
 
 38
 Because the gas was shipped in bulk, rather than individual units, it was obviously impossible for Phillips to affix a warning to the product which would reach the ultimate customer. The bulk wholesaler has no way of telling who the ultimate purchaser might be, and has no package on which to endorse any warning. Phillips cannot be held liable for its intermediary's failure to take advantage of, use, or impart to others information already within the intermediary's knowledge. Hence, Phillips' duty stopped with its vendee, Williams Pipeline. As a manufacturer, Phillips owes no duty to warn the ultimate customer and further, its failure to do so does not render the product defective. This is especially true when, as in this case, the plaintiff did not even purchase the gas but moved into a vacant house, the former tenants of which had purchased the gas from a dealer supplied by Williams.
 
 
 39
 Finally, I note that a warning that propane may be odorless in some circumstances would have had no effect here as Ronald Donahue actually smelled the gas in the area a day earlier.
 
 
 40
 Regardless, I submit that since it was impossible for Phillips to make the product carry its own message, whether or not Phillips was delinquent in training its distributor Williams Pipeline, should have been submitted to the jury as Phillips' tendered instruction D.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 The LP gas system was purchased and delivered to the Wilson home prior to its occupancy by the Donahues
 
 
 [3]
 The other defendants entered into settlements with the Donahues prior to trial. The District Court reduced the Donahues' jury award to reflect those settlements
 
 
 [4]
 Phillips admits that it is "undeniable" that ethyl mercaptan has a propensity "to change in its ability to warn because its odor will change when it chemically combines with oxygen or rust." Appellant's Brief at 18
 
 
 [5]
 We find unconvincing Phillips's assertion that there was "overwhelming" evidence that the odor of the ethyl mercaptan at the Wilson home did not, in fact, fade. Appellant's Brief at 17. Both Ronald and Kay Donahue testified that they did not smell gas before the explosion. The jury was free to believe this testimony, and indeed it was the responsibility of the jury to decide this question of fact. Equally unconvincing is Phillips's argument that because the ethyl mercaptan had passed through several hands since Phillips had delivered the product to Williams Pipeline, it should no longer be held strictly liable. Phillips marketed the ethyl mercaptan as a warning agent, the effectiveness of which obviously must extend past the date of sale to its immediate purchaser
 
 
 [6]
 The District Court instructed the jury that:
 Your verdict must be for plaintiff ... if you believe:
 First, defendant sold the ethyl mercaptan in the course of defendant's business, and
 Second, the ethyl mercaptan was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and
 Third, defendant did not give an adequate warning of the danger, and
 Fourth, the product was used in a manner reasonably anticipated, and
 Fifth, plaintiff ... was damaged as a direct result of the ethyl mercaptan being sold without an adequate warning.
 
 
 [7]
 Phillips's tendered instruction D, which the District Court declined to give, read as follows:
 Under Instructions Numbers 9, 13, and 17 [the verdict-directing instructions on the strict liability failure to warn theory] your verdict must be for defendant if you believe Williams Pipeline Company should have known that ethyl mercaptan could oxidize and its odor as a warning agent would fade if it oxidized.
 
 
 [8]
 It is somewhat misleading to characterize the obligation of a defendant in a strict liability context as a "duty to warn." Because strict liability analysis focuses on the nature of the product rather than the conduct of defendant, notions of "duty" and "breach" as those terms are utilized in a negligence context are irrelevant. The central inquiry is whether the product placed into the stream of commerce by defendant is dangerous due to a lack of warning
 
 
 [9]
 Missouri courts have developed another exception, known as the "learned intermediary" doctrine, for the special case involving a drug manufacturer that supplies prescription drugs to a doctor, who then prescribes them to a patient. See Krug v. Sterling Drug, Inc., 416 S.W.2d 143, 146 (Mo.1967); Johnston v. Upjohn Co., 442 S.W.2d 93, 95 (Mo.Ct.App.1969). The rationale for that exception, that a patient may obtain the product only through a qualified professional who presumably will explain the dangers of the product to the patient, cannot sensibly be stretched to apply to this case. Whatever else Williams Pipeline may be, it is not a "learned intermediary" within the meaning of the Missouri doctrine
 
 
 [10]
 We observe as we have in previous cases that it is not clear whether federal or state law applies to this issue. See Monger v. Cessna Aircraft Co., 812 F.2d 402, 408 n. 8 (8th Cir.1987). In light of our conclusion that the application of Rule 407 would not have precluded the admission of the challenged evidence in this case, and because no claim is made that the admission of the document was improper under Missouri law, that question need not be determined here
 
 
 [11]
 The District Court apparently refused to admit the exhibit on hearsay grounds. See Transcript Vol. IV at 884-85. Although we might disagree that the exhibit is hearsay--arguably it was not offered to establish the truth of the statements therein, but to show that employees of Phillips were made aware of the odor fade problem--we conclude that any error in this regard was harmless for the reasons stated in our discussion in the text