*12 OPINION OF THE COURT
Thomas F. McGowan, J.
Michael T. Little was exposed to Duraban 2E, an insecticide manufactured by defendant Dow Chemical Company, Inc. (Dow), on July 24th, 1981, while working on property owned by his employer, Battenfeld American, Inc., on Clinton Street in Buffalo, New York. The insecticide, which had been mixed by an employee of defendant Tops, Inc., was applied by another Tops employee to the loading dock of a food warehouse, owned by defendant J.G. Fieri Company (Fieri), adjacent to Battenfeld’s property. Plaintiff subsequently commenced the instant action, alleging, inter alia, that the defendants were negligent in labeling the insecticide and in failing to provide adequate warnings to its users and individuals who might come into contact with it. Defendants now move to dismiss and for summary judgment.
Dow and its codefendants advance two separate grounds for the relief requested. The first, that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) (7 USC § 136 et seq.) preempts State labeling and warning requirements and, therefore, State court tort actions such as this. Second, that the scientific evidence adduced establishes that the injuries suffered by Little could not have resulted from his exposure to Dursban 2E.
Preemption was raised for the first time on this motion. It was not pleaded as an affirmative defense, nor have defendants formally moved to amend their answers to add it. Plaintiffs contend that the failure to plead preemption operates to waive it, in accord with the customary construction of CPLR 3018 (b). Their argument, however reflexively cogent it may appear, is misplaced. To raise the preemption issue is to challenge the court’s competence to entertain a certain kind of case. It is then essentially a question of subject matter jurisdiction (Nuernberger v State of New York, 41 NY2d 111, 115-117; Lacks v Lacks, 41 NY2d 71, 75). As such, preemption need not be pleaded, cannot be waived, and may be raised at any point in the course of litigation (Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324). Defendants’ claim that FIFRA preempts State common-law negligence actions is, therefore, properly before the court.
Federal preemption of State law is rooted in the Supremacy Clause (US Const, art VI, cl [2]; Gibbons v Ogden, 9 Wheat [22 US] 1, 210-211). Preemption occurs when Congress expressly *13 displaces State law, and when the Federal regulatory scheme is so pervasive that the intent to preclude State action can be inferred. State law is also preempted when it conflicts with Federal law (Pacific Gas & Elec. v Energy Resources Commn., 461 US 190, 203-204).
Here, defendants claim that FIFRA preempts State common-law negligence actions based on an alleged failure to warn. There are cases on both sides of the question.
Preemption analysis is essentially a matter of statutory construction (Tribe, American Constitutional Law § 6-25, at 480 [2d ed]). The first step, then, is to read the statute in light of its legislative history (Ferres v City of New Rochelle, 68 NY2d 446, 451).
FIFRA provides that a State "shall not impose or continue in effect any requirements for labeling * * * in addition to or different from those required under this Act” (7 USC § 136v [b]). State regulation of pesticide labeling is expressly preempted. No mention is made, however, of State common-law negligence actions. FIFRA does not expressly preempt tort actions based on the failure to warn.
Nor can it be said that Congress sought to preclude State action regarding pesticides. The Senate report states that "[generally, the intent of the provision is to leave to the States the authority to impose stricter regulation on pesticides use than that required under the Act” (Sen Rep No. 838, 92d Cong, 2d Sess 30 [1982], reprinted in 1972 US Code, Cong & Admin News 4021). FIFRA’s regulatory scheme does not preempt State tort law by implication.
The question before the court boils down to whether FIFRA preempts State tort law because of a conflict between the two. In other words, do common-law negligence actions make compliance with FIFRA impossible or serve as an obstacle to the accomplishment of the congressional objectives underlying the statutory scheme.
In Ferebee v Chevron Chem. Co. (736 F2d 1529), the United States Court of Appeals for the District of Columbia Circuit held that FIFRA did not preempt failure to warn actions. The court reasoned that: "[S]tate damages actions of the sort at issue here do not stand as an obstacle to the accomplishment of FIFRA’s purposes. Such a conflict would exist only if FIFRA were viewed not as a regulatory statute aimed at protecting citizens from the hazards of modern pesticides, but rather as an affirmative subsidization of the pesticide industry *14 that commanded states to accept the use of EPA-registered pesticides. That interpretation of FIFRA, however, is precluded by both the explicit savings clause at 7 U.S.C. § 136v(b) and by the entire legislative history of the Act. Of equal importance, federal legislation has traditionally occupied a limited role as the floor of safe conduct; before transforming such legislation into a ceiling on the ability of states to protect their citizens, and thereby radically adjusting the historic federal-state balance, United States v. Bass, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971), courts should wait for a clear statement of congressional intent to work such an alteration. The Supreme Court has often counselled such hesitance. Thus, in Nader v. Allegheny Airlines, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1975), the Court held that, even were the Civil Aeronautics Board to find that an action was not a 'deceptive’ one within the meaning of the Federal Aviation Act of 1958, a state jury remained entitled to find that action fraudulent. That the action was permissible under federal law did not mean, in the absence of a clear congressional intent to promote the action, that states were required to tolerate it. See also Silkwood v. Kerr-McGee Corp., [464 US 238], 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). So too in this case the fact that Congress has chosen to allow the states to regulate the use of pesticides approved by the EPA means that states retain the lesser power to control the use of such pesticides by requiring that at least some of the resulting injuries be compensated. In response, Chevron perhaps will choose not to send paraquat into Maryland; perhaps the company will distribute additional information on paraquat to Maryland users; or Chevron may petition the EPA to be allowed to use a more detailed label. What Chevron cannot do, however, is to force states, under the purported aegis of a statute aimed at protecting against the hazards of modern pesticides, to accept the use of paraquat and to tolerate uncompensated injuries to that state’s citizens. Congress has not expressed a 'clear and manifest purpose’ to achieve such a result; on the contrary, protection of pesticide users and victims by both federal and state law lies at the center of the Act’s design” (supra, at 1542-1543).
This court finds Judge Mikva’s opinion compelling. Those cases cited by defendants which hold that FIFRA preempts State law (Kennan v Dow Chem. Co., 717 F Supp 799; Fisher v Chevron Chem. Co., 716 F Supp 1283; Fitzgerald v Mallinckrodt, Inc., 681 F Supp 404) reached that result by relying on *15 the First Circuit’s decision in Palmer v Liggett Group (825 F2d 620). That reliance is misplaced inasmuch as the First Circuit explicitly distinguished the Cigarette Labeling and Advertizing Act where "Congress mandated the precise wording required in a label” from the minimum requirement standards set by FIFRA (supra, at 623, n 5; see, Cox v Velsicol Chem. Corp., 704 F Supp 85, 86-87; Roberts v Dow Chem. Co., 702 F Supp 195, 198-199).
However, the Supreme Court’s recent decision in International Paper Co. v Ouellette (479 US 481) undercuts Ferebee’s precedential value. There, the question was whether Vermont common-law nuisance actions were preempted by the Clean Water Act. The Supreme Court held the act preempted such suits, noting that: "these liabilities would attach even though the source had complied fully with its state and federal permit obligations. The inevitable result of such suits would be that Vermont and other States could do indirectly what they could not do directly — regulate the conduct of out-of-state sources” (supra, at 495).
The impact of the State common-law tort action held to be preempted in International Paper (supra) is too closely analogous to that here to ignore. Plaintiffs’ causes of action for improper labeling and failure to warn conflict with FIFRA and, therefore, are preempted.
Dursban 2E was registered with EPA. For Dow to register its product, the EPA had first to find that the pesticide would not have "unreasonable adverse effects” (7 USC § 136a [c] [5] [C]) and that exposure to the product would not adversely affect human physiology (40 CFR 162.11 [c] [1] [i] [F]; [ii] [F]; [iii] [D]). The EPA’s registration, based as it is on the finding that Dursban 2E was not unreasonably risky to human beings, obviates plaintiffs’ remaining claims of negligence, strict liability in tort for defective design and breach of warranty. Plaintiffs’ complaint is, therefore, dismissed as to Dow Chemical Company, Inc.
The remaining defendants seek summary judgment on the grounds that the relevant scientific evidence shows that exposure to Dursban 2E could not have caused Little’s injuries. Defendants’ proof is contravened by the affidavits of plaintiffs’ two physicians, Drs. McClenathan and Zwirecki. The evidentiary material tendered by plaintiffs is sufficient to raise a question of fact requiring a trial (Zuckerman v City of New York, 49 NY2d 557, 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068). It is therefore
*16 Ordered, that defendant Dow’s motion for summary judgment is granted; and it is further
Ordered, that the motions for summary judgment by defendants J.G. Fieri Company, Niagara Frontier, Inc., and Tops, Inc., are denied.