267 N.J. Super. 34 (1993)
630 A.2d 805
PETER MACRIE, SR., PETER MACRIE, JR. AND TONI MARIE MACRIE, PLAINTIFFS-APPELLANTS,
v.
SDS BIOTECH CORP., A/K/A FERMENTA PLANT PROTECTION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1993.
Argued May 14, 1993.
Decided August 5, 1993.
*37 Before Judges HAVEY, STERN and BROCHIN.
Lars Hyberg argued the cause for appellants (McAllister, Westmoreland, Vesper & Schwartz, attorneys; Christine T. Jones, on the brief; and Ventnor Professional Campus, attorneys; Stephen C. Rubino, on the brief).
John J. Murphy, III, argued the cause for respondent (Stradley, Ronan, Stevens & Young, attorneys; Mr. Murphy, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
In this strict-liability, failure-to-warn suit, plaintiffs appeal from an order for summary judgment dismissing their complaint. Because we are "reviewing the dismissal of [plaintiffs'] claims as legally insufficient, we must accept as true all the allegations of the complaint, the affidavits and products of discovery submitted on [their] behalf. We must also draw those reasonable inferences that are most favorable to [their] cause." Littman v. Gimello, 115 N.J. 154, 160, 557 A.2d 314, cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989), quoting from Portee v. Jaffee, 84 N.J. 88, 90, 417 A.2d 521 (1980). The following are the material facts viewed in that light.
Plaintiffs are employees of a produce broker, a family-run corporation which purchases fruits and vegetables from farmers and resells them to other resellers in the distribution chain. Defendant SDS Biotech Corp. manufactures Bravo 500, a fungicide which it sells to farmers to be applied to their crops in the field. Either directly or through a distributor, defendant sold Bravo 500 to Albert Iulianetti, a farmer.
When the fungicide was sold to Mr. Iulianetti, it was accompanied by a detailed, six-page brochure whose contents are prescribed by regulations promulgated by the Federal Environmental Protection Agency pursuant to the Federal Insecticide, Fungicide, *38 and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq. These warnings and precautions include the following:
Causes eye irritation. May be a potential skin sensitizer.
Do not get in eyes. Wear goggles or eye shield when handling this product. In case of contact with eyes, flush with plenty of water immediately for 15 minutes. Seek medical attention for eyes immediately.
Avoid contact with skin or clothing....
Do not take internally.
Avoid breathing spray mist.
Do not apply this product in such a manner as to directly or through drift expose workers or other persons. The area being treated must be vacated by unprotected persons.
....
It is a violation of Federal law to use this product in a manner inconsistent with its labeling.
Do not enter treated area to perform hand labor within 24 hours of application unless protective clothing is worn.
....
Written or oral warnings must be given to workers who are expected to be in a treated area or in an area about to be treated with this product.... "Warning. Area treated with Bravo 500 on (date of application) Do not enter without appropriate protective clothing until the sprays have dried. In case of accidental exposure, wash exposed area with plenty of water and get medical attention. For further information, see `Precautionary Statements' on the label."
Contrary to the manufacturer's directions, Mr. Iulianetti sprayed the Bravo 500 on his butternut squash after harvesting, while they were stored in bins. One of the plaintiffs testified in depositions that he learned afterwards that the squash had been "drenched" with the fungicide. This use of the fungicide in a manner "inconsistent with its labeling" is a violation of federal law. 7 U.S.C.A. § 136j(a)(2)(G).
Plaintiffs' employer purchased the squash from Mr. Iulianetti. Ordinarily, the fruits and vegetables that plaintiffs received arrived packed in cardboard cartons and plaintiffs did not touch the produce. However, on the occasion pertinent to this law suit, they accepted the squash from Mr. Iulanetti in pallet bins and repacked them into cartons. In the course of repacking the squash, they rubbed off the dried residue of Bravo 500, causing particles of the fungicide to become airborne and to permeate the entire building. *39 Bravo 500 settled on plaintiffs' skin and entered their lungs, and they were seriously injured.
On the record before us, there are only two sources of proof of the severity of the threat which Bravo 500 poses to human health. The first is plaintiffs' claim that they have suffered serious injuries as the result of their exposure to the product. Defendant's motion for summary judgment does not dispute those claims. The second is the insert or brochure prescribed by the Federal Environmental Protection Agency pursuant to FIFRA, supra, 7 U.S.C.A. § 136 et seq., which details the warnings and precautions required and the grave risks entailed in the application of defendant's fungicide to field crops before harvesting. If these facts are proved at trial, a jury would be justified in concluding that defendant's fungicide is ultra-hazardous and that unguarded exposure to it is highly dangerous.
To recover for their injuries, plaintiffs instituted this product liability suit directed only against the manufacturer of the fungicide. They claim that Bravo 500 is defective, but only because SDS Biotech Corp., its manufacturer, failed to warn them of the dangers of contact with the product when it is not properly applied. They do not assert that the product was defective in any other respect. They do not dispute the adequacy of the warnings, approved by the Federal Environmental Protection Agency, which defendant provided to Mr. Iulanetti, but they claim that they should have been warned directly.[1]
*40 Defendant moved for summary judgment. For purposes of its motion, it conceded that Mr. Iulanetti's misuse of Bravo 500 was foreseeable. We construe this concession to mean that contrary to its directions, some unstated percentage of farmers using Bravo 500 will spray it directly on their vegetables after harvesting.
In support of its motion for summary judgment, defendant contended that it was obligated to warn only "users" of its product and, since plaintiffs' only contact with the fungicide was with residue on butternut squash, they were not "users." Alternatively, defendant alleged that there was no practical way for it to provide plaintiffs with a warning. Plaintiffs responded that defendant should have warned them in newspaper advertisements or should have provided the farmers who bought Bravo 500 with leaflets for them to distribute to their vendees with their produce.
The motion judge granted defendant's motion for summary judgment. He ruled that defendant was obligated to warn only reasonably foreseeable users and that that category included only the farmers who applied Bravo 500 to their crops. Requiring manufacturers of fungicides and similar products to warn everyone else who might foreseeably be exposed to the product, either by newspaper advertising or by the distribution of brochures, would, the court held, be unreasonably onerous.
Plaintiffs have appealed to us. They allege that both grounds for the motion judge's ruling were erroneous. During the argument before us, we asked for, and subsequently received, supplemental briefs on the question whether plaintiffs' State law tort claim was preempted by FIFRA, supra, 7 U.S.C.A. § 136. We have therefore also considered that issue.
Middlemen of various types participate in the transmission of fruits and vegetables from the farms where they are grown to our tables. If farmers misapply Bravo 500 so as to leave their produce coated with a dangerous residue, it is foreseeable that employees of a distributor that is the first link in the distribution chain after the produce leaves the farm risk exposure to the *41 fungicide. Their exposure could be materially reduced if they receive appropriate warnings and precautionary instructions. On the basis of these facts, a jury could find that defendant's fungicide is defective if adequate warnings are not communicated to persons who risk serious ill effects from unprotected contact with it. See Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 205, 485 A.2d 305 (1984); Feldman v. Lederle Laboratories, 97 N.J. 429, 449, 479 A.2d 374 (1984); Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242-43, 432 A.2d 925 (1981).
We reject defendant's contention that as a matter of law it had no obligation to warn plaintiffs because they were not "users" of its product. If farmers can be expected to leave a residue of Bravo 500 on their squash, that residue is analogous to the component of a finished product. In Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 451 A.2d 179 (1982), the Court viewed the defendant, an independent contractor that had rebuilt part of a machine according to the owner's specifications, as a component manufacturer. The opinion declared a "general rule ... that the manufacturer of a component part of a product may be held strictly liable for injuries caused by a defect in that part if the particular part did not undergo substantial change after leaving the manufacturer's hands." Id. at 399, 451 A.2d 179. The Court held specifically that a party that "undertakes to rebuild part of a machine in accordance with the specifications of the owner can be held strictly liable for breach of its legal duty to make the machine safe or to warn of the dangers inherent in its use." Id. at 403, 451 A.2d 179. (Emphasis added.)
One respect in which the present case differs from Michalko is that plaintiffs in this case are employees of a remote vendee. However, as New Jersey law has recognized, under some circumstances a manufacturer may have a duty to warn remote vendees of its product. See Nieves v. Bruno Sherman Corp., 86 N.J. 361, 365, 372-73, 431 A.2d 826 (1981); Seeley v. Cincinatti Shaper Co., 256 N.J. Super. 1, 606 A.2d 378 (App.Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992).
*42 Cimino v. Raymark Industries, Inc., 739 F. Supp. 328 (E.D.Tex. 1990), although applying Texas law, is consistent with the law of our State and involves a factual pattern analogous to the present case. While employed at refineries and elsewhere, the plaintiffs in Cimino had contracted asbestos-related injuries or diseases as the result of their working with a finished product, insulation, that contained asbestos. Two of the defendants sold raw asbestos to manufacturers which used it as a component for the fabrication of insulation. Those manufacturers sold the insulation directly or through intermediaries to plaintiffs' employers. The court held that the suppliers of raw asbestos were liable to the plaintiffs for failure to warn them of the dangers of the asbestos in the insulation.
Similarly, in Bryant v. Technical Research Co., 654 F.2d 1337 (9th Cir.1981), Eastman Chemical Products manufactured a chemical which it sold in tank trucks to Ashland Chemical Company. Ashland sold the chemical in bulk to Technical Research Company. Technical blended the chemical with other substances to produce a lacquer thinner that it sold to Columbia Paint Company, a wholesaler and retailer, which resold it to plaintiff's employer, a furniture manufacturer which used the lacquer thinner in its production processes. Plaintiff was injured as the result of exposure to the lacquer thinner at work. Blaming the ingredient manufactured by Eastman, he sued Eastman for failure to communicate a warning to him. The Court said, "The adequacy of a bulk manufacturer's warning to those other than its immediate vendee is usually held to be a jury question." Id. at 1346. Cf. Brizendine v. Visador Company, 437 F.2d 822 (9th Cir.1970) (manufacturer of panes of glass sold to door makers to insert in doors was liable for failing to warn its distributor, retailers, and ultimate users that the glass was too light for use in public buildings).
Determining whether a product suffers from a failure-to-warn or a design defect depends upon a risk-utility analysis. See e.g. Michalko v. Cooke Color & Chem. Corp., supra, 91 N.J. at *43 394-95, 451 A.2d 179 (1982); Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 199-202, 447 A.2d 539 (1982); Cepeda v. Cumberland Engineering Company, Inc., 76 N.J. 152, 167-180, 386 A.2d 816 (1978), overruled on other grounds, Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 406 A.2d 140 (1979). If, as is usually the case, the additional cost and difficulty of providing a warning is negligible, warnings that offer even a moderate increase in utility are warranted. See Campos v. Firestone, supra, 98 N.J. at 207, 485 A.2d 305; see also Freund v. Cellofilm Properties, Inc., supra, 87 N.J. at 238 n. 1, 432 A.2d 925 (1981). However, defining a defective product in terms of a risk-utility analysis implies that when adequate warnings and instructions are necessary to prevent a product from causing a high risk of grave physical harm, the failure to provide warnings and instructions with the product may cause it to be defective even though providing them may be difficult and expensive. In the present case, where a jury could find that plaintiffs' foreseeable exposure to Bravo 500 would threaten them with serious physical harm, the jury could also determine that minimizing the danger warranted unusually strenuous efforts to provide them with warnings and instructions.
Defendant contends that warning persons in plaintiffs' situation was not possible. However, cases from other jurisdictions demonstrate that methods to warn have been used or required which would be possible here. One such case is Donahue v. Phillips Petroleum Co., 866 F.2d 1008 (8th Cir.1989). In Donahue, the plaintiffs were injured by propane gas which exploded when they attempted to light a propane fueled water heater. Propane gas is naturally odorless. Defendant Phillips Petroleum Co. manufactured a chemical which was added to the propane gas to give it a distinctively unpleasant odor that would warn of a leak. The odorizing chemical was added to the gas by the pipeline company that sold the gas to a distributor. Plaintiffs bought the propane gas from a retailer. Their claim against Phillips Petroleum Co. was that it had a duty to warn them, as the ultimate *44 consumers, that the additive would lose its distinctive odor under certain conditions. Arguing on appeal that the trial court should not have submitted the case against it to the jury, Phillips Petroleum Co. asserted, as defendant SDS Biotech Corp. does in the present case, that "warnings are impractical given the nature of the product and the way in which it is marketed." Id. at 1011. The Court of Appeals rejected the argument, explaining:
The fact that it might be logistically difficult to disseminate a warning does not undercut the strict liability analysis, which focuses on the condition of the product rather than the conduct of the defendant.
Moreover it is not, as Phillips suggests, impossible to warn as to the possibility of odor fade. Indeed, Phillips's assertion is belied by its own brochure explaining the danger, which was prepared after the accident involved here and was introduced into evidence on this issue.... Phillips made no effort to discharge its obligation by contracting with its purchaser to ensure that adequate warnings ultimately reach the consumer.
[Ibid.]
In Bryant v. Technical Research Co., supra, the court suggested that a manufacturer might require its vendees to pass its warnings on to others in the chain of distribution or obtain its distributor's customer list and warn them directly. In Whitehead v. St. Joe Lead Co., Inc., 729 F.2d 238 (3d Cir.1984), the court indicated that suppliers could provide warning pamphlets to its customers for distribution to their employees. Cf. Lakeman v. Otis Elevator Co., 930 F.2d 1547, 1551 (11th Cir.1991) (If a manufacturer knows or should know that downstream distributors are not giving adequate warnings to the end user of a product, then the bulk manufacturer may be liable for failing to take action). On the basis of the present record and in the light of these authorities, we hold that defendant has not demonstrated beyond any genuine dispute of material fact that it would not have been feasible to warn plaintiffs. Whether providing those warnings was a reasonable precaution is a jury question.
We turn next to the question whether plaintiffs' claim for relief is preempted by the Federal Insecticide, Fungicide and *45 Rodenticide Act (FIFRA), 7 U.S.C.A. §§ 136 et seq.[2]
FIFRA is a "comprehensive regulatory statute" which regulates "the use, as well as the sale and labeling, of pesticides ... produced and sold in both intrastate and interstate commerce...." Wisconsin Public Intervenor v. Mortier, 501 U.S. ___, ___, 111 S.Ct. 2476, 2479, 115 L.Ed.2d 532, 540 (1991), quoting from Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815, 825 (1984). It forbids their sale without prior registration with the Environmental Protection Agency, 7 U.S.C.A. § 136a(a), and it conditions registration on a determination by EPA that "the pesticide will not cause `unreasonable adverse effects on the environment.'" Ruckelshaus, supra, 467 U.S. at 992, 104 S.Ct. at 2867, 81 L.Ed.2d at 825. Among the grounds for denial of registration is disapproval by the EPA of the proposed "labeling" for the product, 7 U.S.C.A. § 136a(c)(5)(B). "Labeling" is defined as follows:
The term "labeling" means all labels and all other written, printed, or graphic matter 
(A) accompanying the pesticide or device at any time; or
(B) to which reference is made on the label or in literature accompanying the pesticide or device
....
[7 U.S.C.A. § 136 (p)(2).]
The Act deals with preemption in the following terms:
(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
[7 U.S.C.A. § 136 v (a), (b).]
Cipollone v. Liggett Group, Inc., 505 U.S. ___, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), is the most recent, authoritative decision on federal preemption. It holds that statutory language in the *46 Public Health Cigarette Smoking Act of 1969 which is similar to section 136v(b) of FIFRA[3] preempts failure-to-warn damage actions against cigarette manufacturers based on allegedly inadequate or misleading labeling. Nonetheless, before and after Cipollone, federal courts have divided over whether or not FIFRA preempts State law failure-to-warn damage actions based on allegedly inadequate pesticide "labeling."[4]
*47 However, as New York State Pesticide Coalition v. Jorling, 874 F.2d 115 (2d Cir.1989) (Irving R. Kaufman, C.J.), persuasively explained, warnings which pesticide manufacturers and applicators are required to give to persons other than users in order to protect the safety of those persons are not preempted because they are not "labeling" within the meaning of § 136(p)(2) of FIFRA. In Jorling, the pesticide industry claimed FIFRA preempted a New York statute which obligated commercial pesticide applicators to post warning signs around the perimeter of any property being treated and required them to give each of their customers a cover sheet providing warnings and safety information. The Circuit Court explained its decision as follows:
The appellants claim that New York's notification provisions constitute "labeling" since those provisions require additional "written, printed or graphic matter" which "accompan[ies] the pesticide or device at any time." Because the notification materials are present in some spatial and temporal proximity to the applied pesticide, it is asserted they "accompany" it. But this definition is rather strained. "Labeling" is better understood by its relationship, rather than its proximity, to the product.
Clearly, since the key function of the scheme is to identify and describe the poisonous chemicals, statutory "labeling" may include a warning. But this does not bar all other similar statements. FIFRA "labeling" is designed to be read and followed by the end user. Generally, it is conceived as being attached to the immediate container of the product in such a way that it can be expected to remain affixed during the period of use. See EPA Labeling Requirements for Pesticides and Devices, 40 C.F.R. sec. 156.10(a)(4) (July 1, 1988).
By contrast, the target audience of the New York notification program is those innocent members of the general public who may unwittingly happen upon an area where strong poisons are present as well as those who contract to have pesticides *48 applied. The mere proximity of the warning, for example, notices posted around an enclosed field or copies of the EPA's labeling information provided to the contracting parties, does not transform the admonition into "labeling" within the meaning of FIFRA sec. 2(p) [136(p)].
.... Notification requirements such as cover sheets, signs, and newspaper advertisements do not impair the integrity of the FIFRA label. Rather, they serve to further the purpose of the statute by enlisting state aid to prevent "unreasonable adverse effects [of pesticide use] on the environment." 7 U.S.C. sec. 136a(c)(5).
.... Indeed, the General Counsel of EPA has advised that the New York regulations do not contravene sec. 24(b) [sec. 136v(b)]: "[I]nterpreting `accompanies' strictly in terms of physical presence would result in clearly extraneous material such as the logo on the applicator's hat and the license plate on the vehicle in which the pesticide is transported being considered labeling." Letter from James C. Nelson, Acting Assoc. Gen. Counsel, Pesticides and Toxic Substances Div., EPA, to Marc S. Gerstman, Deputy Comm'r and Gen. Counsel, N.Y. Dep't of Environ. Conserv. (Jan. 17, 1989). While we do not rest our decision on a deferral to the EPA's interpretation of the statute, we note that our holding is consistent with the EPA's position that "labeling" comprises those materials designed to accompany the product through the stream of commerce to the end user, but not those designed to notify purchasers of services or the general public. Therefore, consistently with section 136v(b), a State may require a pesticide manufacturer or applicator to post warnings in stores where pesticides are sold and on property to which they are applied, and to provide safety information to customers to whom the property belongs.
Subsequent Federal decisions, including Wisconsin Public Intervenor v. Mortier, 501 U.S. ___, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), support Jorling's interpretation of FIFRA. Mortier holds that FIFRA does not preempt an ordinance which, among other things, requires pesticide applicators to post warning placards on property they were treating. Id., 501 U.S. ___, at ___, 111 S.Ct. 2476 at 2480, 115 L.Ed.2d 532 at 541. Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby, 958 F.2d 941 (9th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992), holds that FIFRA does not preempt a California statute which requires the posting of point-of-sale warnings where certain products, including pesticides, are sold. See also Burke v. Dow Chemical Co., supra, 797 F. Supp. at 1140, which recognizes the distinction between FIFRA "labeling" and warnings to third parties about pesticides.
Mortier, Allenby, Jorling, and Burke convince us that, consistently with FIFRA, State law may require a pesticide manufacturer like defendant to take reasonable steps, either through instructions *49 to its customers or directly through its own efforts, to assure that persons, like plaintiffs, who handle produce bought directly from farmers who have used Bravo 500, will be warned of its dangers, at least by receiving defendant's brochures in the form prescribed by the E.P.A. A jury could certainly find that if plaintiffs had received those brochures, they would have made inquiries or taken precautions which would have prevented the ill effects which they claim to have suffered. The summary judgment in defendant's favor can therefore not be sustained on the basis of federal preemption.
We emphasize that we have not made findings of fact. We have determined only that at this stage of the law suit, on the basis of the limited record submitted to us, defendant has not demonstrated beyond any genuine dispute of material fact that it is entitled to prevail as a matter of law. Defendant was therefore not entitled to summary judgment in its favor.
The judgment appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] If this case were subject to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 to 7, the defendant's provision of warning and precautionary labeling to its direct customers would have been a statutory defense. N.J.S.A. 2A:58C-4. However, the Act does not apply to any "environmental tort action." N.J.S.A. 2A:58C-6. An "environmental tort action" is one, like the present suit, "seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances...." N.J.S.A. 2A:58C-1b(4). Perhaps the label defense was made inapplicable to environmental tort actions because the potential hazard of "toxic chemicals or substances" requires warning persons who cannot be reached by the label on the package which holds the product.
[2] See William T. Smith & Kathryn M. Coonrod, FIFRA Preemption after Cipollone, For the Defense, July 1993, at 16.
[3] See Levesque v. Miles Inc., 816 F. Supp. 61, 66-68 (D.N.H. 1993).
[4] Subsequent to Cipollone, most courts considering the issue hold that FIFRA preempted state common law claims. Papas v. Upjohn Co. ("Papas II"), 985 F.2d 516, 520 (11th Cir.1993); Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc. ("Arkansas-Platte II"), 981 F.2d 1177, 1178-79 (10th Cir.1993), petition for cert. filed, 61 USLW 3789 (1993); Shaw (Billy Joe) v. Dow Brands, Inc., 994 F.2d 364 (7th Cir.1993); Levesque v. Miles Inc., 816 F. Supp. 61 (D.N.H. 1993); Casper v. E.I. DuPont De Nemours and Co., 806 F. Supp. 903, (E.D.Wash. 1992); King v. E.I. DuPont De Nemours & Co., 806 F. Supp. 1030 (D.Me. 1992); Gibson v. Dow Chemical Co., 1992 W.L. 404681 (E.D.Ky. 1992); Brennan v. Dow Chemical Co., 613 So.2d 131 (Fla.App. 4 Dist. 1993); Yowell v. Chevron Chemical Co., 836 S.W.2d 62 (Mo. App.S.D. 1992).

A few post-Cipollone cases, however, hold that there is no preemption. MacDonald v. Monsanto Co., 813 F. Supp. 1258 (E.D.Tex. 1993); Couture v. Dow Chemical U.S.A., 804 F. Supp. 1298 (D.Mont. 1992); Burke v. Dow Chem. Co., 797 F. Supp. 1128, 1140 (E.D.N.Y. 1992);
The majority of decisions prior to Cipollone also hold that FIRFA preempted State law failure-to-warn damage claims alleging inadequate "labeling." Worm v. American Cyanamid Co., 970 F.2d 1301 (4th Cir. 1992); Rodriguez v. Shell Oil Co., 818 F. Supp. 1013 (S.D.Tex. 1993); Young v. American Cyanamid Co., 786 F. Supp. 781 (E.D.Ark. 1991); Herr v. Carolina Log Bldgs., Inc., 771 F. Supp. 958 (S.D.Ind. 1989); Kennan v. Dow Chemical Co., 717 F. Supp. 799 (M.D.Fla. 1989); Fisher v. Chevron Chemical Co., 716 F. Supp. 1283 (W.D.Mo. 1989); Fitzgerald v. Mallinckrodt, Inc., 681 F. Supp. 404 (E.D.Mich. 1987); Davidson v. Velsicol Chemical Corp., 108 Nev. 591, 834 P.2d 931 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1944, 123 L.Ed.2d 650 (1993); Little v. Dow Chemical Co., Inc., 148 Misc.2d 11, 559 N.Y.S.2d 788 (N.Y.Sup. 1990); Watson v. Orkin Exterminating Co., Inc., 1988 W.L. 235673 (D.Md. 1988).
But see Hurt v. Dow Chemical Co., 963 F.2d 1142 (8th Cir.1992); Chemical Specialties Mfrs. Ass'n., Inc. v. Allenby, 958 F.2d 941 (9th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992); Thornton v. Fondren Green Apartments, 788 F. Supp. 928 (S.D.Tex. 1992); Montana Pole & Treating Plant v. I.F. Laucks and Co., 775 F. Supp. 1339 (D.Mont. 1991), aff'd on other grounds, 993 F.2d 676 (9th Cir.1993); Riden v. ICI Americas, Inc., 763 F. Supp. 1500 (W.D.Mo. 1991); Evenson v. Osmose Wood Preserving, Inc., 760 F. Supp. 1345 (S.D.Ind. 1990); Stewart v. Ortho Consumer Products, Div. of Chevron Chemical Co., 1990 W.L. 36129 (E.D.La. 1990); Cox v. Velsicol Chemical Corp., 704 F. Supp. 85 (E.D.Pa. 1989); Roberts v. Dow Chemical Co., 702 F. Supp. 195 (N.D.Ill. 1988); Villari v. Terminix Intern., Inc., 692 F. Supp. 568 (E.D.Pa. 1988); Wilson v. Chevron Chemical Co., 1986 W.L. 14925 (S.D.N.Y. 1986); Ciba-Geigy Corp. v. Alter, 309 Ark. 426, 834 S.W.2d 136 (1992).
The cases which hold that there was no preemption follow Ferebee v. Chevron Chemical Company, 736 F.2d 1529, 1542-43 (D.C. Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Ferebee distinguished between State statutes and regulations on the one hand and State damage actions on the other for purposes of FIFRA preemption. In the light of Cipollone, this distinction is no longer tenable.